2CARTER, Judge.
This is an appeal after remand to the trial court for a determination of whether petitioner is entitled to an exemption from LSA-R.S. 3:4201 et seq., the Louisiana Meat and Poultry Inspection Law.

BACKGROUND

Petitioner, Henry Cox, Sr., operates a meat market under the name of Cox’s Meat Market in Reserve, Louisiana. In December, 1988, the Louisiana Department of Agriculture and Forestry (Department) seized a large quantity of meat from petitioner’s business and charged Cox with ten violations of the Meat and Poultry Inspection Law for allegedly manufacturing, transporting, and selling uninspected pork products for human consumption.
After an adjudicatory hearing, the hearing examiner determined that Cox violated LSA-R.S. 3:4210 in that he. manufactured and transported uninspected pork products for sale to other business establishments for resale without meeting the proper wholesale inspection requirements. For ten violations, Cox was placed on probation and assessed with a penalty of $20,000.00, $18,000.00 of which was suspended if the fine was paid within thirty days.
Thereafter, Cox filed a petition for judicial review with the Nineteenth Judicial District *952 Court.[1] On review, the trial judge determined that, pursuant to LSA-R.-S. 3:4215 B, making smoked I sand andouille sausage is a type of meat processing which is exempt from the inspection requirement. The trial judge then reversed the finding by the hearing examiner that Cox violated the Meat and Poultry Inspection Law.
The Department appealed this judgment. On appeal, this court determined that the hearing examiner was not clearly wrong in finding that Cox sold uninspected meat products in violation of LSA-R.S. 3:4210. Accordingly, this court reversed the trial court judgment. See Cox v. Louisiana Department of Agriculture and Forestry, 597 So.2d 20, 23 (La.App. 1st Cir.1992). However, this court also determined that there was insufficient evidence in the record to determine whether Cox was entitled to the exemption set forth in LSA-R.S. 3:4215 B and remanded the matter to the trial court to determine whether Cox is entitled to the exemption.
On remand, the trial court determined that Cox is not entitled to the exemption, but suspended the fine levied by the Department in that Cox did not receive equal treatment under the law with regard to the imposition of the penalty.
From this adverse judgment, Cox and the Department appeal, assigning numerous alleged errors.[2] Cox assigns the following errors:
1. The trial court committed error in finding that Mr. Cox was not exempt under LSA-R.S. 3:4215(B).
2. The trial court erred in not finding that the decision of the Department was arbitrary, capricious and manifestly erroneous.
3.The trial court erred in not finding that the actions of the Department and the statutes that they proceeded under violated Mr. Cox’s right to equal protection under the law by treating someone-who sold meat to restaurants differently than someone who sold meats over the counter.
J^4. The trial court erred in not finding that Mr. Cox’s right to due process was violated.
The Department assigns the following error:
1. The district court erred in suspending the fine imposed by the Department of Agriculture and Forestry where the fine was imposed in accordance with law and where the First Circuit Court of Appeal remanded the matter to the district court solely for the introduction of evidence to determine whether Cox is entitled to the exemption contained in La.R.S. 3:4215(B).

ENTITLEMENT TO EXEMPTION

The Meat and Poultry Inspection Law, LSA-R.S. 3:4201 et seq., was enacted to prevent uninspected and/or adulterated meat products from entering intrastate commerce and to protect the public from such products. As a result, the Meat and Poultry Inspection Law imposes and enforces inspection requirements with respect to intrastate operations and commerce at least equal to those imposed on interstate operations and commerce. LSA-R.S. 3:4202. Louisiana Revised Statute 3:4206 requires the inspection of all meat food products prepared in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment where meat products are prepared solely for intrastate commerce. Moreover, LSA-R.S. *953 3:4210 prohibits the sale or transportation of meat products for use as human food unless they have been inspected in accordance with the Meat and Poultry Inspection Law.
However, LSA-R.S. 3:4215 B sets forth certain exemptions from the Meat and Poultry Inspection Law. At all times pertinent hereto, LSA-R.S. 3:4215 B provided as follows:[3]
IsThe provisions of this Chapter requiring inspection of the slaughter of animals and the preparation of carcasses, parts thereof, meat and meat food products shall not apply to operations of types traditionally and usually conducted at retail stores and restaurants, when conducted at any retail store or restaurant or similar retail type establishment for sale in normal retail quantities or service of such articles to consumers at such establishments.
After the original appeal, this matter was remanded to determine whether Cox is entitled to the exemption, namely whether the operations he conducted (1) were traditionally and usually conducted at retail stores and restaurants and (2) were conducted at a retail store or restaurant or similar retail establishment in normal retail quantities to consumers at such establishments.
In the instant case, the majority of the evidence presented at the trial on remand consisted of the deposition testimony of numerous customers who purchase Cox’s sausage, several of Cox’s competitors, and Cox’s own depositions. The record also contains the trial testimony of Cox and officials from the Department.
The uncontradicted evidence presented on the remand clearly established that, for the most part, the making and selling of smoked and andouille sausage by Cox were the types of activities traditionally and usually conducted by retail stores and restaurants. Most of the customers testified that they had been purchasing sausage made by Cox in his store in excess of thirty years. Further, most of Cox’s competitors testified that they had been engaged in the business of making and selling sausage in their retail stores for in excess of forty to fifty years. All of the I (¡customers who testified stated that their purchases were made for their own personal consumption or consumption by family members and friends. Moreover, Cox and some of his competitors acknowledged that, in addition to selling pork products to individuals within the state, they shipped pork products to people or organizations located outside the state and sold pork products to area restaurants, which the restaurants would incorporate into their menu items.
Additionally, the evidence also showed that the sales conducted by Cox were in excess of normal retail quantities. The Louisiana Administrative Code, Title 7, Part XXXIII, Chapter 169, Section 16903(10), defines “normal retail quantities” as “sales to a single customer not exceeding” 100 pounds for pork. In his August 24, 1992, deposition, Cox testified that the Gumbo Shop purchased approximately 900 pounds of his product per week and that Commander’s Palace and Mr. B’s each purchased close to 1,800 pounds per month. Cox testified in his deposition testimony of September 2, 1992, that one of the restaurants he sold sausage to purchased 600 pounds of his product every two weeks. Clearly, these amounts are in excess of the amount generally purchased by a single customer and are in excess of the 100-pound limit set forth in the Louisiana Administrative Code definition.
Considering all of the evidence presented at the hearing, we cannot say that the trial judge erred in finding that Cox is not entitled to the exemption set forth in LSA-R.S. *954 3:4215 B. We note that the meats which go into the sausage product made by Cox are inspected prior to their incorporation into the sausage and that the casings into which the sausage is placed have also been inspected. We also note that the evidence revealed that Cox’s customers are satisfied with the quality of his sausages and that he has never encountered any complaints with regard to the quality of his product. However, the laws relative to meat inspections are designed to protect the public against adulterated products entering the market. As such, the manufacture and sale of these ^products are prohibited, except in limited circumstances. One such instance is that provided for in LSA-R.S. 3:4215 B.
From the record, it appears that, although Cox only holds a retail license, he manufactures and sells his sausage product to persons other than consumers and in quantities in excess of normal retail quantities. For these reasons, Cox is not exempt under LSA-R.S. 3:4215 B from the inspection requirements imposed on all manufacturers under the Meat and Poultry Inspection Law.

CONSTITUTIONAL CLAIMS

In these assignments of error, Cox contends that he was denied equal protection under the laws in that the law applied to him treats classes of persons who sell meat products differently and that the actions taken by the Department were in violation of his due process rights.
We find no merit to either of these contentions. First, with "regard to the equal protection argument, as Cox notes in his brief to this court, the proper standard for review is whether a person or class of persons was denied the same protection of the laws which is accorded to other persons or classes of persons in similar circumstances. Schwegmann Giant Super Markets v. Edwards, 552 So.2d 1241, 1247 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1280 (La.1990), U.S. cert. denied, 496 U.S. 938, 110 S.Ct. 3217, 110 L.Ed.2d 665 (1990). Cox sells sausage and other meat products, which are required to be inspected. All persons who sell meat and meat products must comply with the requirements of the Meat and Poultry Inspection Law. However, the exemption contained in LSA-R.S. 3:4215B permits him to sell his product to consumers at retail without the rigorous inspection required of other manufacturers. The only prohibition applicable to Cox, under the facts presented in the instant case, is that he cannot sell products in excess of the normal retail quantities unless he meets the more rigorous inspection requirements imposed on all persons engaged in the sale of meat products. The fact that Cox can sell to a person who purchases in normal retail quantities for his own | spersonal consumption, but is prohibited from selling large quantities of his sausage product to other retail outlets who resell his product or to restaurants who incorporate his product into menu items does not operate to deprive him of equal protection under the laws in violation of the federal and state constitutions. There is clearly a legitimate state interest in having different regulations for retail sellers and wholesale sellers.
Moreover, with regard to his contentions that the Department’s actions or the state statutes pursuant to which the Department took such actions violated the due process clauses of the federal and state constitutions, the proceeding before the hearing officer was conducted pursuant to the Louisiana Administrative Procedure Act, LSA-R.S. 49:950 et seq., which has been determined not to violate due process. These assignments of error are without merit.

PENALTY

LSA-R.S. 3:4233 B authorizes the commissioner of the Department to assess a civil penalty of not more than $5,000.00 for each violation of the Meat and Poultry Inspection Law. Because Cox was found to have committed ten violations, he faced a maximum civil penalty of $50,000.00. A fine of $20,-000.00 for the ten violations was ultimately imposed. However, $18,000.00 of this civil penalty was suspended upon the condition that Cox pay the fine within thirty days.
Generally, an agency decision assessing a penalty should not be set aside unless it is arbitrary, capricious, or characterized as an abuse of discretion. LSA-R.S. *955 49:964(G)(5); Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La.1984); In the Matter of McGowan, 533 So.2d 999, 1004 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1168 (La.1989), U.S. cert. denied, 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989).
In the instant ease, the evidence on the issue of penalty produced at the hearing on remand consisted of the testimony of Iflseveral of Cox’s competitors and the testimony of officials from the Department.
Wayne P. Jacob produces smoked and an-douille sausage, among other things, in La-Place, Louisiana. Jacob testified that during the six months of a year in which he produces sausage, he makes about 1,200 pounds of sausage and 2,000 pounds of andouille weekly. Jacob admitted that, while operating under a retail license, he and his father sold the sausage they made to area restaurants. According to Jacob, they also shipped sausage all over the United States. Jacob testified that, three years ago, the Department informed him that he was in violation of the law in operating his business. Upon receiving this information, Jacob promptly ceased shipping and selling to restaurants.[4] Jacob testified that he was not assessed with a penalty because he voluntarily ceased the prohibited activities.
Greg Joseph Simon, manager of Weber’s Supermarket in Reserve, testified that his store sold sausage to restaurants twice in a couple of years. There was no testimony as to whether he or his store was assessed a penalty for this activity.
Ernest J. Bailey, producer of Jacob’s World Famous Andouille, made approximately 3,000 to 4,000 pounds of andouille sausage weekly. However, after federal and state compliance authorities prohibited him from shipping his product out of state and selling his product to area restaurants, his business dropped nearly 50%. Upon receiving notification from the federal and state authorities, Bailey ceased these activities. Also, he was not assessed with a fine. Bailey testified that, based upon his knowledge, Cox was the only person fined as a result of the federal and state actions. According to Bailey, Cox told him that his family had been engaged in the sausage business for years and that the law did not apply to their operation. Cox informed Bailey that imhe was taking the matter to court to determine whether they were subject to the law or exempt from its provisions.
Harold Haydel owns and operates a supermarket in LaPlace where he makes and sells andouille sausage. Haydel testified that he makes approximately 1,500 to 1,800 pounds of andouille per week. According to Haydel, some of his business comes from people out of state who request his product, some of his business comes from sales to restaurants, and some of his business results from over-the-counter sales to local residents. However, Haydel noted that he did not ship sausage.
Cox testified that, upon being notified that he was in violation of the law, he promptly ceased delivering his product to out-of-state consumers and selling his sausage product to area restaurants. According to Cox, the Department informed him that they were imposing a fine because he had a previous violation, but Cox testified that he did not have any prior violations. Because he was the only person who was fined for his activities, Cox believed that he was fined because he filed suit against the Department.
Henry Baxter, a Department field director for the state-federal meat inspection program, testified regarding the reason that Cox was fined. Baxter testified that Cox “was offered opportunity to stipulate, as the other people” involved were, “and for whatever reason, he chose not to take that stipulation.” Baxter further acknowledged that he had no evidence that Cox had continued to sell his product in violation of the law once he was admonished to cease.
Gus Trapani, compliance officer for the meat inspection division of the Department, testified that he had never written Cox up for a violation, but that Cox was in their compli- *956 anee program for a reason, intimating that he had been written up by a previous compliance officer.
In setting aside the penalty, the trial court determined, among other things, that “there was an unlawful attempt to chill | nhis [Cox’s] right to appeal by the hearing officer.”[5] We have carefully reviewed the entire record in this matter and find that the penalty imposed on Cox was arbitrary, capricious, and characterized by an abuse of discretion. The evidence clearly showed that, although numerous other producers of andouille sausage were found to be in violation of the same provisions of the Meat and Poultry Inspection Law as was Cox, there was no testimony by any of the four competitors that they had been assessed with a civil penalty. Each had entered into a stipulation regarding the alleged violation and had voluntarily ceased selling the product to restaurants and/or shipping the product. There was no evidence that any of these andouille producers, except Cox, had challenged the Department’s interpretation of the law regarding the sale of andouille sausage to restaurants and shipment of andouille to consumers in other states.[6] Moreover, although the Department intimated that Cox had previously violated provisions of the Meat and Poultry Inspection Law, the Department failed to establish that such a violation occurred.
The Department may not arbitrarily assess a penalty against one violator and not against others in the same or similar circumstances simply because that violator questions the agency’s actions and subsequently seeks relief through the courts. Therefore, we find that the trial court judgment setting aside the penalty was correct.

CONCLUSION

For the above reasons, the judgment of the trial court finding that Cox is not entitled to the exemption set forth in LSA-R.S. 3:4215 B and suspending the fine imposed by the Department is | ^affirmed. Costs in the amount of $890.04 are to be shared equally by Cox and the Department.
AFFIRMED.
GONZALES, J., concurs in part, dissents in part and assigns reasons.

.In his original and supplemental petitions for judicial review, Cox alleged that he was aggrieved of the decision of the hearing officer for the Department in the following non-exclusive respects:
1. The decision was a violation of constitutional and statutory provisions;
2. The decision was made upon unlawful procedure;
3. The decision was affected by other errors of law;
4. The decision was arbitrary, capricious, and characterized by an abuse of discretion and/or was clearly an unwarranted exercise of discretion; and
5.The decision was manifestly erroneous.

. Although the opinion does not address each assignment of error individually, the opinion disposes of all issues raised. We also note that the trial judge refused to allow certain testimony, but that such testimony was proffered. Neither party assigned error as to the trial judge's refusal to permit the introduction of the proffered testimony. Therefore, this issue is not before us on appeal.

. By Acts 1992, No. 56, § 1, effective August 21, 1992, LSA-R.S. 3:4215 B was amended as follows:
The provisions of this Chapter requiring inspection of the slaughter of animals and the preparation of carcasses, parts thereof, meat and meat food products shall not apply when:
(1)Operations are of types traditionally and usually conducted at retail stores and restaurants, and
(2) When said operations are conducted at a retail store, restaurant, or similar retail type establishment, and
(3) Are for sale in normal retail quantities, or are part of a normal retail service, and
(4) Are sold or provided to consumers at such establishments. [Footnote omitted].

. Jacob testified that the cessation of these activities resulted in a loss of approximately 20% of his business.

. We note that the trial judge’s reasons for setting aside the penalty also included a notion that Cox had been denied equal protection. However, his use of the term "equal protection” was not in the nature of a ruling on any constitutional issue.

. Henry Baxter denied that Cox was the only andouille producer required to pay a fine. Baxter testified that he knew of one other person that paid a fine; however, he could not remember who that individual was and would need to check his records for the identity of such person.