677 So.2d 1075 (1996)
In re George DYER and Fire Apparatus Specialist, Inc.
No. 95 CA 2297.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Writ Denied October 11, 1996.
*1076 Elizabeth A. Alston, New Orleans, for Appellants George Dyer and Fire Apparatus Specialist.
R. Gray Sexton, Maris LeBlanc McCrory, Patricia H. Douglas, Baton Rouge, for Appellee Commission on Ethics for Public Employees.
Before WATKINS, FOIL and TANNER,[*] JJ.
FOIL, Judge.
This case is on appeal from a decision of the Commission on Ethics for Public Employees (Commission), holding that George Dyer and Fire Apparatus Specialist, Inc. (FAS) violated certain provisions of the Code of Governmental Ethics. After a thorough review of the record, we affirm.

FACTS
The Third District Volunteer Fire Department (TDVFD) originated in 1951. It is governed by its articles of incorporation and by-laws, with governing authority vested in the Board of Directors. On July 16, 1987, the TDVFD entered into a contract with the Fire Protection District No. 3 for the Parish of Jefferson (Parish), to be the sole provider of fire protection services.
Mr. Dyer has been involved with the TDVFD for over thirty years, serving as Assistant Fire Chief since June, 1992. In addition to his involvement with the volunteer fire department, he owns 40% of FAS, and his wife owns another 20%. Mr. Dyer serves as President of FAS and is on its Board of Directors. He receives a bi-weekly salary from the company. FAS sells new fire trucks and equipment, and repairs old fire trucks and equipment. Between 1989 and 1993, the TDVFD paid FAS $198,230 for sales and services rendered.
After conducting a formal investigation, the Commission issued charges against Mr. Dyer and FAS on June 22, 1994. A public hearing was held, after which the Commission *1077 concluded that both Dyer and FAS violated the Code in the following respects:
1) Dyer violated La.R.S. 42:1111C(2)(d) by rendering services for compensation to FAS when FAS had a business or financial relationship with his agency, the TDVFD;
2) Dyer violated La.R.S. 42:1112B(2) and (3) by participating, as the Assistant Fire chief of the TDVFD, in certain transactions in which FAS had a substantial economic interest when he owned a substantial economic interest in and was an officer and employee of FAS;
3) FAS violated La.R.S. 42:1113A by entering into transactions that are under the supervision or jurisdiction of the agency (the TDVFD) of the public servant, Dyer, who owned a controlling interest in FAS; and
4) FAS violated La.R.S. 42:1117 by paying compensation to Dyer at a time when he was prohibited from receiving it under Section 1111C(2)(d).
The Commission fined Mr. Dyer $1,000.00 for each of his two code violations, and fined FAS $1,000.00 for each of its two code violations. The Commission further ordered that Mr. Dyer and FAS cease doing business with the TDVFD as long as Mr. Dyer continues his involvement as a volunteer fire fighter and for one year from the date he ceases his relationship with the TDVFD. Mr. Dyer and FAS filed the instant appeal.

STANDARD OF REVIEW
Generally, administrative agency adjudication is subject to judicial review under Section 964 of the Louisiana Administrative Procedure Act. La.R.S. 49:964. Under Subsection G, a reviewing court may affirm the decision of the agency, remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Accordingly, the manifest error test is used in reviewing the facts as found by the agency, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency discretion. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La.1984).

DUE PROCESS
Due process requires that a person be informed of the charges against him; be given the opportunity to present evidence; be represented by counsel; be allowed to cross-examine witnesses against him; and be given the right to appeal. U.S. Const. amends. V, XIV; La. Const. art. I, § 2. To be accorded relief for a violation of due process rights, the person must show on review that he was prejudiced by the violation. La. R.S. 49:964G.
First, appellants contend that the Commission's procedural rules fail to provide fundamental due process protections. Specifically, they contend there is inadequate notice of the methods and procedures available to defend claims.
The procedural rules governing the Commission are contained in the Ethics Code at La.R.S. 42:1141. Also, the Code states that, except as otherwise provided, all proceedings conducted before the Commission shall be subject to and in accordance with the Louisiana Administrative Procedure Act, La.R.S. 49:950, et seq. We find that the instant proceeding was conducted in accordance with that Act, which has been determined not to violate due process. Cox v. Louisiana Department of Agriculture and Forestry, 93-0420 (La.App. 1 Cir. 3/11/94), 636 So.2d 950, 954, writ denied, 94-1597 (La. 9/30/94), 642 So.2d 875.
Appellants further contend that the Commission has not adopted rules which comply with the requirements of the Administrative Procedure Act. More particularly, they note that the ethics rules fail to address and prohibit the impermissible mingling of prosecutorial and adjudicative functions of *1078 the Commission. They complain that the same attorney is both counsel to and prosecutor for the Commission. Appellants argue that, by allowing counsel to serve in this dual capacity, they cannot be afforded a fair and impartial hearing.
This argument has been raised in several prior cases dealing with the Commission and has been rejected. See, e.g., Tebbe v. Commission on Ethics for Public Employees, 526 So.2d 1354, 1362 (La.App. 1st Cir.1988), rev'd on other grounds, 540 So.2d 270 (La.1989); In re Beychok, 484 So.2d 912, 928 (La.App. 1st Cir.), rev'd on other grounds, 495 So.2d 1278 (La.1986). Following the jurisprudence, we also reject appellants' contention.
Appellants also assert that the Commission erred by prohibiting them from taking depositions of the members. They claim the testimony sought was critical to the determination of procedural and substantive due process issues and was not sought for the purpose of recusal.
This issue was one of several raised in a writ application filed by appellants with this court. The writ was denied in that respect on February 23, 1996 in docket no. 95 CW 2434. As such, we shall not address it in this appeal.

PREJUDGMENT OF FACTS
Appellants argue that the Commission relied on prejudged issues of fact and law in rendering its decision, namely, the IT and Wilcox, cases.[1] They contend the Commission erroneously relied on evidence from those cases to determine the outcome of the instant case. The Commission, on the other hand, notes that appellants fail to point out which facts it allegedly prejudged. It argues it did not rely on evidence from those cases, but rather relied on the legal analyses applied therein, as it had every right to do. We agree with the Commission and find this argument to be without merit.

PUBLIC INTEREST
Appellants contend that the Commission's decision does not serve the public interest and "creates unnecessary barriers to public service." First, they assert that there was no conflict of interest in this case in that Dyer's private interest in FAS did not conflict with his voluntary, non-compensated duties as Assistant Fire Chief with the TDVFD. Further, they argue that the Commission's prohibition on the TDVFD's purchase of goods and services from FAS will have a significant impact on the fire department. For example, it will have to travel long distances to find another fire department specialist who deals with fire department equipment.
On the contrary, the Commission notes that it is bound by the Code to protect the public's interest, part of which includes disallowing involvement in volunteer organizations which results in private financial gain. FAS was paid almost $200,000 by Dyer's volunteer fire department. Such an obvious conflict goes against the purpose of the Code. Again, we agree with the Commission that this case involves the precise conflict situation that the Code prohibits. Appellant's argument in this regard has no merit.

APPLICATION OF THE CODE
The central issue in this case is whether the TDVFD is engaged in the performance of a governmental function so as to subject its members to application of the Code. Appellants argue they are not within the jurisdiction of the Code because Dyer is not a "public employee." They assert that the TDVFD is a private non-profit organization and not a public or governmental entity.
Mr. Dyer also argues that, regardless of whether the rest of the Code applies to him, he falls under an exception that states participation in a bona fide organized public volunteer fire department is not precluded "when no compensation is received." La. R.S. 42:1123(1).
The Commission found as fact that Mr. Dyer is a "public employee" for purposes of application of the Code. It also found that, in his capacity as Assistant Fire Chief of the TDVFD, Mr. Dyer is engaged in the performance *1079 of a governmental function and is therefore subject to the provisions of the Code. The Commission further opined that the quoted exception urged by Mr. Dyer does not apply in this case. It stated that the exception was not designed to allow public employees to receive prohibited income through a corporation in which he and his spouse own a controlling interest or enter into transactions that are otherwise prohibited.
After a thorough review, we conclude that the record fully supports the facts found by the Commission and we find no manifest error therein. Further, we did not discover any errors of law in the Commission's thorough and articulate decision, finding rather that the Commission correctly interpreted and applied the law as set forth in the Code.
Accordingly, we hereby affirm the decision of the Commission and, in doing so, we adopt and append a copy of the same to this opinion. Costs of this appeal are assessed to appellants.
AFFIRMED.

APPENDIX

COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES
DATE: July 27, 1995
OPINION NO. 93-225
RE: In the matter of George Dyer and Fire Apparatus Specialties, Inc.
The Commission on Ethics for Public Employees (the "Commission"), at its meetings of January 12, 1995, February 17, 1995 and March 30, 1995, conducted a public hearing for the purpose of exploring the following:
CHARGES
1.
That George Dyer may have violated Section 1111 C(2)(d) of the Louisiana Code of Governmental Ethics (La.R.S. 42:1111C(2)(d)) by providing compensated services to Fire Apparatus Specialties, Inc. (FAS) at a time when FAS was selling equipment and services to the Third District Volunteer Fire Department for which George Dyer served as Assistant Fire Chief.
2.
That George Dyer may have violated Section 1112B(2) and or (3) of the Louisiana Code of Governmental Ethics (La.R.S. 42:1112B(2) and or (3)) by virtue of his participation, as Assistant Fire Chief, in purchases of goods and services made by the Third District Volunteer Fire Department from Fire Apparatus Specialties, Inc. (FAS), of which he owned 40%.
3.
That Fire Apparatus Specialties, Inc. (FAS) may have violated Section 1113A of the Louisiana Code of Governmental Ethics (La.R.S. 42:1113A) by virtue of selling goods and services to the Third District Volunteer Fire Department, at a time when George Dyer, owner of 40% interest in FAS, served as Assistant Fire Chief.
4.
That FAS may have violated Section 1117 of the Louisiana Code of Governmental Ethics (La.R.S. 42:1117) by virtue of compensation paid to George Dyer, Assistant Fire Chief for the Third District Volunteer Fire Department, at a time when FAS was selling goods and services to the Third District Volunteer Fire Department.
On the basis of the testimony and evidence presented by counsel for the Commission, George Dyer and FAS, the Commission now makes the following essential:

I.

FINDINGS OF FACT

1.
George Dyer owns 40% of Fire Apparatus Specialties, Inc. and serves as a member of the board of directors and president of the company. His wife owns an additional 20% of the company. FAS services, sells and maintains fire-fighting equipment.

*1080 2.
George Dyer and his wife are compensated employees of FAS, receiving bi-weekly paychecks from the company as well as year-end bonuses if funds are available. Mr. Dyer is the only salesperson for FAS.

3.
The Third District Volunteer Fire Department ("TDVFD") is a corporation for which George Dyer serves as Assistant Fire Chief. The Assistant Fire Chief is on 24-hour call, including evenings and holidays. In his capacity as Assistant Fire Chief, he received no wages or salaries. However, he did receive the use of an automobile for which insurance coverage, fuel and maintenance were, for the most part, paid by the TDVFD. There were no written or published restrictions on his use of this automobile, and it was equipped with a public license tag. No person authorized the use of a TDVFD vehicle may take it out of town on a personal matter.

4.
George Dyer has been involved with the fire department for about thirty-two (32) years and has served as Assistant Fire Chief since June of 1992. He joined the TDVFD as a firefighter at the minimum age of seventeen years. George Dyer was in privileged status with the TDVFD from 1982 until 1992. Privileged status means that he became a non-voting member of the department although he continued to pay dues to the TDVFD. George Dyer returned to active membership with the TDVFD in 1992.

5.
George Dyer has served in numerous positions with the TDVFD, up to and including Assistant Fire Chief.

6.
The Assistant Fire Chief is second in command of the department to the Fire Chief at all fires and drills. He assists the fire chief in the discharge of all duties and, in his absence, assumes command.

7.
On July 16, 1987 the TDVFD and the Fire Protection District No. 3 for Jefferson Parish through the Jefferson Parish Council entered into a fire protection contract. The TDVFD agreed to provide all of the fire protection services for Fire Protection District No. 3. The term of the contract was five years; however, the contract remains in place as of this date.

8.
During the last four years, FAS has routinely conducted business with the TDVFD. FAS received income for services and equipment supplied to the TDVFD in the following amounts:

 1990-1991 $30,833.51
 1991-1992 60,002.58
 1992-1993 45,568.46
 1993-1994 33,532.22
 1994-Jan. 1995 6,675.68

9.
George Dyer and his assistant testified that the net profit to FAS from sales to the TDVFD were as follows:

 1990-1991 $ 5,066.59
 1991-1992 12,226.88
 1992-1993 1,613.10
 1993-1994 5,082.16
 1994-1995 821.25

These figures do not include deductions for general overhead expenses.

10.
The employees, officers, and board members in general, and George Dyer in particular, are "public employees" for purposes of the application of the Code of Governmental Ethics for the following reasons:
A. TDVFD was formed and provided fire protection services prior to the formation of Fire Protection District No. 3 and to the execution of a contract with Fire Protection District No. 3. TDVFD was thereafter incorporated for the sole purpose of providing fire protection and related services and equipment to the public within the 3rd Fire Protection District of Jefferson Parish.
B. Any TDVFD assets acquired or constructed from the proceeds of the parish or from any public funds, other than contract consideration, constitute property of the parish.
C. TDVFD acquisitions of depreciable equipment that are made with public funds *1081 must be made in the name of the district as opposed to TDVFD.
D. The expenditure by TDVFD of any public funds must be only for the purpose of providing fire protection services.
E. TDVFD must submit to the Finance Director of the Parish of Jefferson on an annual basis a financial statement showing the disbursements of its public funds. Other contractors provided similar financial statements.
F. TDVFD must submit a report to the parish for each year in advance when significant increases are anticipated.
G. For its part, the parish must pay over to TDVFD an amount of money representing 100% of the net proceeds of the present millage excluding only millage monies collected for capital improvements levied annually on the assessed evaluation of property in the fire protection district and must also surrender to TDVFD any and all allotments of funds, equipment and services which are presently being provided by the parish.
H. In the event TDVFD is unable to pay its compensated employees, those compensated employees will be "blanketed in as employees of the parish under the current job titles ..."
I. TDVFD's contract with the parish defines "public funds" as follows: Public Funds is intended to mean monies from bond issues levied for any reason whatsoever for the specific purpose of improving the FIRE PROTECTION DISTRICT NO. 3 and used in connection with the COMPANY; any lump sum state or federal grants obtained for capital improvements for major equipment, land and buildings; however public funds does include hose allotments, chauffeur payments, and any other supplemental payments or benefits now received by the Company from any governmental source at the time of the signing of this contract or may be granted in the future.
J. TDVFD's contract with the parish states: Contract Consideration means millage and State Revenue Sharing money as levied, received, and collected for the FIRE PROTECTION DISTRICT NO. 3, but shall not include base allotments, chauffeur payments, and other supplemental payments or benefits now received by the Department from any governmental source at the time of the signing this contract.
K. If any such TDVFD "public funds" are used in the anticipated construction of a facility, then the site selection shall be made by the parish council as opposed to the district.
L. The Department of Emergency Management makes recommendations to TDVFD which must be followed unless viewed as unreasonable and, even then, the only remedy available to the TDVFD is to appeal to the parish council.
M. TDVFD purchases and renovations made with public funds require compliance with the public bid law.
N. Of the TDVFD's 1994 budget of $893,977 all but approximately $400 was from various public sources.
O. Corporations (such as TDVFD) that enter into "mandatory fire protection service contracts" with the parish are required by ordinance and contract to:
(1) allow all contractor records to be "inspect[ed] upon reasonable notice";
(2) be subjected "to an annual audit" which audit shall be "approved by the Legislative Auditor;"
(3) provide "annual reports to the Finance Director;"
(4) submit to the Parish annual reports "in advance when significant increases are anticipated;
(5) maintain "adequate books and records."
P. The compensated employees of TDVFD qualify for and indeed are paid state supplemental payments pursuant to the provisions of LSA-R.S.33:2002.
Q. TDVFD is funded, in part, by fire protection insurance premiums distributed to fire protection districts and departments pursuant to LSA-R.S.22:1585.
R. Acquisitions of goods and services by TDVFD are exempt from the payment of state and parish sales taxes.

*1082 S. Vehicles owned by TDVFD are equipped with public license plates.

11.
The Chief Engineer for the TDVFD is in charge of the purchases of all equipment and the maintenance on such equipment. The Chief Engineer routinely discussed such purchases and orders with George Dyer, stating that he "very definitely" relied on Mr. Dyer's advice and that he was influenced on his purchasing decisions by Mr. Dyer's wisdom and experience including, but not limited to purchases made from FAS.

12.
The President of the TDVFD stated that he discussed purchases with Mr. Dyer in the board room at meetings where decisions were being made on purchases and that Mr. Dyer would respond to all questions asked of him. He further stated that he believed Mr. Dyer was responding in his capacity as a member of the Operations Department of the TDVFD.

II.

PRINCIPLES OF LAW
Mr. Dyer has been charged with violating Sections 1111C(2)(d) and 1112B(2) and (3) of the Code of Governmental Ethics.
Section 1111C(2)(d) provides in pertinent part as follows:
Section 1111. Payments from nonpublic sources
* * * * * *
C. Payments for nonpublic service.
* * * * * *
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
* * * * * *
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.
R.S. 42:1115A(1) and B appear at Section 1115 of the Code and provide as follows:
Section 1115 Gifts
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency,
* * * * * *
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee's agency.
(2) Has substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee's official duty.
Section 1111C(2)(d) prohibits public servants from receiving anything of economic value for services rendered to any person from whom the public servant would otherwise be proscribed from receiving a gift by virtue of Section 1115A(1) or B.
If FAS has contractual or other business or financial relationships with TDVFD then, under those circumstances, and as Mr. Dyer would be proscribed from receiving a gift from FAS, he would likewise be prohibited by virtue of the application of 111C(2)(d) from rendering services for compensation to FAS.
Sections 1112B(2) and (3) of the Code prohibit public servants from participating in transactions in which certain categories of persons would otherwise have a substantial *1083 economic interest. By way of illustration, if Mr. Dyer owned a substantial economic interest in FAS, was an officer or director of FAS or an employee of FAS, then under those circumstances Sections 1112B(2) and (3) would prohibit Mr. Dyer from participating in any transaction in which FAS would have a substantial economic interest.
"Participate" and "transaction involving the governmental entity" have been defined respectfully as follows:
Section 1102. Definitions
(15) "Participate" means to take part in or to have or share responsibility for action of a governmental entity or a proceeding, personally, as a public servant of the governmental entity, through approval, disapproval, decision, recommendation, the rendering of advice, investigation, or the failure to act or perform a duty.
(23) "Transaction involving the governmental entity" means any proceeding, application, submission, request for a ruling or other determination, contract, claim, case, or other such particular matter which the public servant or former public servant of the governmental entity in question knows or should know:
(a) Is, or will be, the subject of action by the governmental entity.
(b) Is one to which the governmental entity is or will be a party.
(c) Is one in which the governmental entity has a direct interest. A transaction involving the agency of a governmental entity shall have the same meaning with respect to the agency.
For its part, FAS likewise has been charged with violating the Code of Governmental Ethics. Section 1113A prohibits certain legal entities from entering into transactions that are under the supervision or jurisdiction of the agency of the public servant. In the context of these proceedings, if Mr. Dyer owned a controlling interest in FAS, FAS would then be prohibited from entering into any contract, subcontract or other transaction that is under the supervision or jurisdiction of TDVFD.
FAS likewise has been charged by the Commission with having violated Section 1117 of the Code. Section 1117 of the Code prohibits the making of payments, the receipt of which are proscribed by Section 1111C(2)(d) of the Code. By way of illustration, if Mr. Dyer is prohibited by virtue of Section 1111C(2)(d) of the Code from receiving anything of economic value for services rendered to FAS, then, correspondingly, FAS is prohibited from making those payments of salary or income.
The restrictions above apply to all public employees. "Public employee" has been defined at Section 1102(18) as follows:
"Public employee" means anyone, whether compensated or not, who is:
(a) An administrative officer or official of a governmental entity who is not filling an elective office.
(b) Appointed by any elected official when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the governmental entity or an agency thereof either as a member of an agency, or as an employee thereof.
(c) Engaged in the performance of a governmental function.
(d) Under the supervision or authority of an elected official or another employee of the governmental entity.
A public employee shall be in such status on days on which he performs no services as well as days on which he performs services. The termination of any particular term of employment of a public employee shall take effect on the day the termination is clearly evidenced. (Emphasis added)

III.

OPINION
It is the opinion and the conclusion of the Commission that Mr. Dyer is a "public employee" as that term has been defined at Section 1102(18) of the Code and accordingly his actions and conduct subject him to the provisions of the Code of Governmental Ethics.
*1084 It is manifest to the Commission that Mr. Dyer in his capacity as the Assistant Fire Chief of TDVFD is engaged in the performance of a governmental function, indeed a quintessential governmental function, and accordingly is subject to the provisions of the Code. TDVFD is a statutorily authorized corporation created for and engaging in only one purpose, that is, discharging fire prevention and fire protection services in the 3rd Fire Protection District for the Parish of Jefferson. Virtually all of its funding is from the public. It is subject to a litany of checks and controls by the parish. It has no significant source of funding other than the public and its expenditure of public funds is subject to close governmental scrutiny. Its employees participate in State mandated supplemental pay and are "blanketed in" to the parish civil service system in the event TDVFD should fail to discharge its "employer obligations".
The Commission, in reaching this conclusion, is guided by the pronouncements of the United States District Court and the United States Court of Appeals in Wilcox vs. Terrytown Fifth District Volunteer Fire Department, 897 F.2d 765 (5th Cir.1990) (attached as Exhibit A). The Terrytown 5th District under examination in this case, together with the 3rd District, represent two of several fire protection districts formed by the Parish of Jefferson to discharge its fire prevention and fire protection services. Indeed, with the exception of only the "Consolidated District", the Parish of Jefferson has chosen to discharge all of its fire protection services through districts that in turn contract with corporations formed only for that purpose: TDVFD in the case of the 3rd District and the Terrytown Fifth District Volunteer Fire Department in the case of the 5th District.
The two districts are set up essentially the same and their contracts with the Parish are virtually identical. In Wilcox, the United States District Court for the Eastern District and, on appeal, the United States Court of Appeals for the Fifth Circuit, dealt with the issue of whether or not employees of the Terrytown Fifth District Volunteer Fire Department ("Terrytown") were "public employees" as opposed to private employees, within the context of the Fair Labor Standards Act. In reaching the conclusion that the employees of the Terrytown Corporation were "public employees", the Fifth Circuit began its analysis by noting that the Terrytown Volunteer Fire Department, Inc. was a "non-profit corporation that provides fire protection services to an unincorporated sector of Jefferson Parish, Louisiana", just as is the case with respect to the 3rd District and its corresponding corporation, TDVFD. The Court noted that the Fair Labor Standards Act contains an exclusion for the employees of a "public agency" and that the definition of "public agency" contained at Section 203(X) of 29 USC included an exclusion for the employees of a "political subdivision of a state".
In analyzing the issue of whether or not the Terrytown Corporation was a "public agency", the Fifth Circuit noted that, "A fire department is, in a sense, the archtypical public agency". In reaching the conclusion that the corporation was in fact an "agency of a political subdivision of the state", the United States Court of Appeals recognized and placed emphasis on the considerations that Terrytown (1) is a "non-profit Louisiana corporation", (2) organized for the purpose of providing fire fighting and fire protection services within the 5th District, (3) operates and is funded "almost exclusively by the proceeds of a millage tax imposed upon Jefferson Parish residents and by allocation of certain state tax dollars", (4) "remains accountable to Jefferson Parish for the way in which such money is spent" [by virtue of the provisions of its contracts that are indistinguishable from the corresponding provisions of the TDVFD contract], (5) can use such public funds only to provide fire protection and related services, (6) "must submit annual financial reports to the financial director of Jefferson Parish", (7) "must submit to the Parish its annual budget for fire protection services", and (8) "must comply with all reasonable recommendations" made by parish agencies.
The Commission cannot distinguish the pronouncements by the Fifth Circuit Court of Appeals in Wilcox from the situation involving *1085 TDVFD. Having concluded that Mr. Dyer is a "public employee", it is necessary to examine his conduct within the framework of the prohibitions contained in the Code.
It is the Commission's opinion and conclusion that Mr. Dyer violated Section 1111C(2)(d) of the Code. Both Mr. Dyer and his spouse are employees of FAS and have received compensation for services rendered to FAS. At the time that compensation was being received by both Mr. Dyer and by his spouse, FAS both had and was seeking to obtain contractual, business and financial relationships with TDVFD in the form of the repeated and consistent pattern of sales of goods and services.
It is also the opinion of the Commission that Mr. Dyer violated Sections 1112B(2) and (3) of the Code. Mr. Dyer was the Assistant Fire Chief. In the absence of the Fire Chief he was the chief operating official. He, either directly or indirectly, supervised staff employees who were responsible for making decisions and implementing those decisions with respect to the purchase of goods and services from vendors such as FAS. Mr. Dyer routinely counseled with the chief engineer concerning the purchase of fire prevention and protection goods and services from FAS. Indeed, and with respect to the sale of goods and services by FAS to TDVFD, it is impossible to distinguish the actions of Mr. Dyer in his capacity as the assistant fire chief and in his corresponding capacity as the only sales representative for FAS.
It is furthermore the opinion of the Commission that FAS violated both Section 1113A of the Code and Section 1117 of the Code. Mr. Dyer and his spouse owned a controlling interest in FAS. By virtue of the prohibition contained at Section 1113A of the Code, the ownership interest of Mr. and Mrs. Dyer in FAS disqualified FAS from entering into contractual and other business and financial relationships that were under the supervision and jurisdiction of the TDVFD. By reason of its numerous sales of goods and services to the TDVFD, FAS violated Section 1113A of the Code.
FAS also made payments of salary and other compensation to Mr. Dyer and to his spouse that Mr. Dyer was prohibited by virtue of Section 1111C(2)(d) from receiving. Accordingly, it is the opinion and the conclusion of the Commission that FAS violated Section 1117 of the Code by having made prohibited salary and related payments to Mr. Dyer.
Prior to and during the course of these proceedings counsel for Mr. Dyer and FAS made numerous written and verbal motions. For the reasons given during the course of these proceedings, those motions are denied.
During the course of the proceedings and in closing arguments counsel for Mr. Dyer and FAS advanced as a defense the application of an exception contained at Section 1123(1) of the Code which provides as follows:
Section 1123. Exceptions
This Part shall not preclude:
(1) Participation in the affairs of charitable, religious, nonprofit educational, public service, or civic organizations, bona fide organized public volunteer fire departments when no compensation is received, or the activities of political parties not proscribed by law.
Provided, however, that the Code of Governmental Ethics shall apply to the purchase of fire trucks by bona fide organized public fire departments.
It is the opinion and the conclusion of the Commission that the quoted exception was not designed to allow public employees such as Mr. Dyer to either receive prohibited income or, through a corporation in which he and his spouse own a controlling interest, enter into transactions that are otherwise prohibited. The cited exception to the Code was designed to allow persons who were otherwise public servants to also engage in volunteer fire prevention activities provided they do not receive any "compensation". By way of illustration, in the absence of an exception a member of the Jefferson Parish Council might be prohibited from being a volunteer fire fighter with the 3rd Fire Protection District as Section 1113 would prohibit that council member from seeking to be *1086 engaged as a volunteer fire fighter with units of the parish. The exception was not designed to allow persons who are not public servants except in their capacity as volunteer fire fighters to receive compensation from prohibited sources or to enter into transactions proscribed by cited sections of the Code. Moreover, it is manifest that the exception is inapplicable if for no other reason than that Mr. Dyer did indeed receive "compensation" for the services he performed for FAS and, for that matter, for the services he performed for TDVFD at least to the extent that he received the unrestricted use of an automobile that was insured, maintained and repaired at the expense of TDVFD.
Accordingly, the Commission imposes a fine of $1,000 for each of the two violations of the Code by Mr. Dyer and a fine of $1,000 for each of the two violations of the Code by FAS. In order to insure that future violations of this sort do not occur, the Commission orders Mr. Dyer and any corporation such as FAS in which he owns a substantial economic interest to cease doing business in the form of the sales of goods and services with the Third District Volunteer Fire Department for a period of one year beyond the date that Mr. Dyer terminates his position as assistant fire chief and otherwise discontinues his service and participation in the Third District Volunteer Fire Department.

IV.

ORDER AND DECREE
On motion duly made and seconded and for the reasons given:
IT IS ORDERED that a fine of $1,000 be and it is hereby imposed on Mr. George Dyer for violating Section 1111C(2)(d) of the Code;
IT IS FURTHER ORDERED that a fine of $1,000 be and it is hereby imposed on Mr. George Dyer for violating Sections 1112B(2) and (3) of the Code;
IT IS FURTHER ORDERED that a fine of $1,000 be and it is hereby imposed on FAS for violating Section 1113A of the Code;
IT IS FURTHER ORDERED a fine of $1,000 be and it is hereby imposed on FAS for violating Section 1117 of the Code.
IT IS FURTHER ORDERED that each of the aforementioned four fines are to be paid to the Treasurer of the State of Louisiana.
IT IS FURTHER ORDERED that Mr. Dyer individually, Fire Apparatus Specialties, Inc. and any other corporation or legal entity in which Mr. Dyer owns a substantial economic interest are ordered and commanded to cease doing business with the Third District Volunteer Fire Department so long as Mr. Dyer continues to serve as the Assistant Fire Chief and continues to be involved as a volunteer fire fighter, officer or committee member with the Third District Volunteer Fire Department, and continuing thereafter for a period of one year reckoning from the date that Mr. Dyer discontinues his relationship with the TDVFD.
By order of the Commission this 27th day of July, 1995.
 /s/ Robert C. Snyder
 Robert C. Snyder, Chairman
 /s/ Thomas W. Barham
 Thomas W. Barham
 /s/ Victor Bussie
 Victor Bussie
 /s/ Avis Baker-White
 Avis Baker-White
Commissioner Goss recused himself from participation in this decision.
NOTES
[*] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] IT Corp. v. Commission on Ethics for Public Employees, 464 So.2d 284 (La.1985) and Wilcox v. Terrytown Fifth District Volunteer Fire Department, 897 F.2d 765 (5th Cir.1990).