694 So.2d 173 (1997)
In re GEORGIA GULF CORPORATION and Robert Harrison, and Kenneth E. Samaha and Sales Tax, Inc.
v.
BOARD OF ETHICS FOR PUBLIC EMPLOYEES.
No. 96-C-1907.
Supreme Court of Louisiana.
May 9, 1997.
R. Gray Sexton, Patricia Hammonds Douglas, Maris LeBlanc McCrory, Baton Rouge, for Applicant.
Murphy James Foster, III, Steven Bernard Loeb, Breazeale, Sachse & Wilson, Baton Rouge; Bradley Michael Grissom, Baton Riuge, for Respondent.
*174 KNOLL, Justice.[*]
This case arises out of a petition for judicial review of the administrative decision of the Commission on Ethics for Public Employees (Ethics Commission). The Ethics Commission filed charges against a former senior agent for the Louisiana Department of Revenue and Taxation, as well as a wholly owned corporation that the former agent created, and the corporation that hired the former revenue agent to determine tax overpayments it made to the state of Louisiana. After conducting an evidentiary hearing, the Ethics Commission concluded that ethical violations occurred and imposed fines.
The Court of Appeal, First Circuit, reversed the determination of the Ethics Commission, finding that the alleged ethical violators were not afforded a fair tribunal which comported with the requirements of due process.[1] We granted certiorari[2] to consider the due process questions raised in the appellate court, particularly those dealing with the involvement of the Ethics Commission prosecutor in the adjudicatory process and the appellate court's interpretation of Allen v. State Board of Dentistry, 543 So.2d 908 (La.1989). For reasons which follow, we affirm the decision of the First Circuit.

FACTS
The Louisiana Department of Revenue and Taxation (Department) employed Kenneth Samaha from February 1982 until June 12, 1992. In the last year of his employment, Samaha served as a revenue senior agent and had the duty of supervising agency audits. On May 12, 1992, the Department began an audit of Georgia Gulf Corporation (Georgia Gulf). As a senior revenue agent, Samaha was tasked with supervising the Department's audit of Georgia Gulf.
On May 21, 1992, Samaha informed the Department that he would resign, effective June 12, 1992. After his resignation, Samaha, through his newly formed corporation, Sales Tax, Inc., contracted on June 22, 1992, with Georgia Gulf to conduct an independent audit to identify overpayments of state and parish taxes that Georgia Gulf had made. Robert Harrison, an in-house tax specialist for Georgia Gulf, negotiated the contract between Georgia Gulf and Samaha/Sales Tax, Inc.
When Samaha's involvement with Georgia Gulf was brought to the attention of the Department, R. Gray Sexton, the executive secretary appointed by the Ethics Commission, investigated the complaints. Subsequently, ethical charges were brought against Samaha,[3] Sales Tax,[4] and Georgia Gulf[5]. The Ethics Commission then conducted a public hearing on the charges. During the course of the hearing which spanned intermittently over six days, Sexton served both as prosecutor and counsel to the Ethics Commission. At its meeting on January 12, 1995, the Ethics Commission[6] concluded that Samaha, Sales Tax, Georgia Gulf, and Harrison were in violation of the Code of Governmental Ethics, and instructed Sexton's staff to prepare a proposed opinion for the Ethics Commission to consider.
By letter dated January 26, 1995, Sexton notified Samaha, Sales Tax, and Georgia Gulf *175 that the Ethics Commission had reached a decision and that he would send them a draft of the proposed opinion. At that time, Sexton also told them that Samaha and Sales Tax were fined $10,000.00 and Samaha was prohibited from assisting a client for compensation before the Department. Georgia Gulf was fined $10,000.00, and Harrison[7] was prohibited from entering into a transaction on behalf of Georgia Gulf with the Department for a period of five years. Sexton further advised that they could make editorial and substantive changes to his staff's proposed opinion and they could submit their own proposed opinion for the Ethics Commission's consideration.
On March 10, 1995, Sexton circulated his proposed opinion and invited the input of Samaha, Sales Tax, and Georgia Gulf. He further advised them that the Ethics Commission would consider the proposed opinion at its meeting on March 30-31, 1995, and that they could appear at the meeting to present their suggestions. The parties were later notified that the hearing was continued to April 28.
In the meantime, Samaha and Sales Tax hand-delivered a letter to Sexton on April 6, 1995, detailing changes to the proposed opinion of the Ethics Commission. Although Georgia Gulf formally objected to the proposed opinion in a pleading dated April 10, 1995, neither Georgia Gulf nor Harrison submitted any changes.
In accordance with the notice provided the parties, the Ethics Commission issued its opinion on April 28, 1995. With minor changes[8], the Ethics Commission adopted Sexton's proposed opinion.

ACTION OF THE COURT OF APPEAL
The appellate court pretermitted the assignments of error raised by Samaha, Sales Tax, Georgia Gulf and Harrison. Using its discretionary right to review issues in the interest of justice, the court reversed the Ethics Commission on the issue of due process.
Relying on our earlier decision in Allen, 543 So.2d 908, the appellate court focused on the intermingling of Sexton's prosecutorial role and his role as the formulator of the findings of fact and conclusions which constituted the opinion of the Ethics Commission. The appellate court held that Allen prohibited the Ethics Commission from utilizing Sexton to draft its findings of fact and opinion. In reaching this determination, it further held that Allen had de facto reversed that portion of In re Beychok, 484 So.2d 912 (La.App. 1 Cir.1986),[9] which had found no impropriety in the use of the counsel for the Ethics Commission to prepare the commission's opinion.

DUE PROCESS UNDER ALLEN
The Ethics Commission contends that the appellate court misconstrued Allen and further erred in finding that Allen reversed part of In re Beychok, 484 So.2d 912. It further contends that the appellate court decision conflicts with our holding in Gulf States Utilities v. PSC, 578 So.2d 71 (La.1991), and another First Circuit decision, In re Dyer, 95-2297 (La.App. 1 Cir. 6/28/96); 677 So.2d 1075; writ denied, 96-1967 (La.10/11/96); 680 So.2d 641, which sanctioned the procedure at issue herein.
From the outset, the Ethics Commission asserts that the due process issues were *176 not raised in the administrative proceedings, were not assigned as error on the appellate level, and are not properly before us. We disagree.
La.Code Civ.P. art. 2129 provides that an assignment of errors is not necessary in any appeal. Code of Practice of 1870, Art. 896, one of the source provisions for La.Code Civ.P. art 2129, provided that if the trial court record was not certified by the clerk of court of the lower court as containing all of the testimony, the supreme court would only judge the case on a statement of the facts. Code of Practice of 1870, Art. 897, another source provision for La.Code Civ.P. art. 2129, provided that an appellant who did not rely wholly or in part on a statement of facts, an exception to the judge's opinion, or a special verdict, but on an error of law appearing on the face of the record, would be allowed ten-days after the lodging of the record to file a statement alleging any errors. The Official Revision Comments under La.Code Civ.P. art. 2129 records that the jurisprudence under the old Code of Practice articles construed them to mean that where there was a certified transcript containing all of the testimony and the grounds for reversal were apparent from the face of the record, no assignment of errors was required. La.Code Civ.P. art. 2129 simply codified this jurisprudence.
Moreover, La.Code Civ.P. art. 2164 provides that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." As noted in the Official Revision Comments under Art. 2164, the appellate court has "complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below." In a similar vein, Uniform Rules of Louisiana Court of Appeal, Rule 1-3 provides that even in the absence of an assignment of errors, the appellate court can review such issues if the "interest of justice clearly requires....".
Under the codal authorities cited herein above, it is clear that the appellate court had the right to consider the issue of due process even though there was no assignment of error in that regard. Accordingly, we find that the due process issue is also properly before us.
Having addressed this preliminary matter, we now proceed to the question of the First Circuit's application of Allen, 543 So.2d 908, to the facts of the present case.
In Allen, we held that there was an impermissible commingling of prosecutorial and adjudicative roles. Not only was the prosecutor the advocate before the administrative board, he was also the one who drafted the findings of fact and conclusions for the administrative board. We observed that the accused party was denied due process because he was denied the right to a neutral adjudicator. Thus, we stated:
In short, we find the commingling of prosecutorial and adjudicative functions [of Wootan] violates both the letter of the Louisiana Administrative Procedure Act and the due process goals it is designed to further ... The idea of the same person serving as judge and prosecutor is anathema under our notions of due process. Such a scenario is devoid of the appearance of fairness.
* * * * * *
The Court of Appeal erred ... in concluding Wootan's ex parte drafting of the findings of the committee was not improper. Wootan's conduct was clearly violative of R.S. 49:960(A) and 49:958 as well as Allen's basic due process rights to a neutral adjudicator and to a hearing that is both actually and apparently "fair." Wootan's drafting of the findings and conclusions of the committee also renders meaningful judicial review of the committee's decision to suspend Allen's license impossible.
Allen, 543 So.2d at 915-916.
In the case sub judice, the Ethics Commission argues that it altered its procedure for preparing the Ethics Commission's opinion after our decision in Allen to specifically extend equal access to opposing parties in a noticed hearing to consider the draft opinion. Through this action, it contends that it conformed its procedure to comply with our pronouncement in Allen to eliminate the ex parte drafting of the opinion. Accordingly, *177 the Ethics Commission contends that the First Circuit's application of Allen was overly broad.
Our examination of Allen reveals three underpinnings for our decision which we may use as a benchmark to assess the Ethics Commission's revised procedure. First, we held in Allen that Wootan's involvement in drafting the opinion of the committee violated La.R.S. 49:958 and La.R.S. 49:960(A). La.R.S. 49:958 specifically provides that if a party submits proposed findings of fact under agency rules, the "decision shall include a ruling upon each proposed finding." La. R.S. 49:960(A) provides that:
members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a case of adjudication ... shall not communicate, directly or indirectly, in connection with any issue of fact or law, with any party or his representative, or with any officer, employee, or agent engaged in the performance of investigative, prosecuting, or advocating functions, except upon notice and opportunity for all parties to participate.
(Emphasis added).
As stated in Allen, these provisions were included to insure that the committee determines the facts as a neutral decision maker. Id. at 914.
In the present case, we note that the Ethics Commission told Sexton of its decision and directed Sexton in an ex parte communication to prepare a proposed opinion. At the same time, the Ethics Commission did not directly communicate its decision to Samaha, Sales Tax, Georgia Gulf, and Harrison. It was only through Sexton that they learned their fate.
We further observe that although La.R.S. 49:958 requires the Ethics Commission to rule on each proposed finding of fact, there was no ruling by the Ethics Commission on the factual changes that Samaha and Sales Tax suggested or the blanket objection that Georgia Gulf and Harrison made to Sexton's proposed opinion. The findings of fact and opinion adopted by the Ethics Commission remained the work product of Sexton, an advocate who had a stake in the factual determination. As such, we find that the factual recitation and opinion was not the product of a neutral decision maker. In this manner, Sexton, whose input as general counsel is already heavily weighted in favor of the Ethics Commission, crossed into the adjudicatory realm. As we pointed out in Allen, La.R.S. 49:958 requires the agency to determine the facts, not a party interested in the outcome. Thus, we find that the current procedure of the Ethics Commission still violates the Administrative Procedure Act.
A second rationale for our decision in Allen was our holding that the prosecutor's involvement in drafting the committee opinion robbed the proceedings of the crucial appearance of fairness. Id. at 915. A "fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942. As stated in Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712:
This applies to administrative agencies which adjudicate as well as to courts. Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." In re Murchison, supra.
Withrow, 421 U.S. at 46, 47, 95 S.Ct. at 1464.
The Ethics Commission asserts that the equal access provided Samaha, Sales Tax, Georgia Gulf, and Harrison to present proposed findings of fact cured the appearance of impropriety that concerned us in Allen. Although we cannot say in the case sub judice that the opinion finally adopted by the Ethics Commission was a "secret product," we find that the factual conclusions and opinion finally adopted were still those of an advocate/prosecutor, not the articulation of an unbiased Ethics Commission, in its own words, of the reasons for its conclusions. As detailed earlier in this opinion, the Ethics Commission opinion is almost a verbatim transcription of Sexton's findings and conclusions. It is patently unfair that a party charged with an ethical violation should feel that he is not only fighting the prosecutor, *178 but also the agency that is supposed to independently determine the merit of the charges leveled against him.
The need for the avoidance of the appearance of impropriety is further strengthened when we view the reason for the Ethics Commission's existence. In Beychok, we said:
The Code of Governmental Ethics ... states that the primary purpose of the code is to assure that decisions are made in an impartial manner free from the influence of private gain. In order to accomplish this goal, the Declaration of Policy found in R.S. 42:1101B emphasizes the need to enact ethical standards protecting against conflicts of interest which may give rise to the appearance of impropriety. A conflict of interest arises when an official is torn between serving two masters: his private interest and the public's. Since a conflict of interest increases the danger of wrongdoing, the code's primary objective is to prevent their occurrence.
The primary objective of the code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that tend to create a perception of conflict of interest.
Id. at 1281. (Citations omitted).
What message does the Ethics Commission convey when the agency charged with discerning facts and judging conflicts of interest depends upon its general counsel to prosecute ethical violators and supply the findings of fact utilized to support its adjudication of the charges brought before it? The failure to clearly delineate and differentiate the functions of the prosecutor and adjudicator presents too great a danger that the appearance of impropriety will be perceived. Thus, we find that the appearance of impropriety that concerned us in Allen is equally present in the case now before us.
A third concern in Allen was the adverse consequences that the commingling of the prosecutorial and adjudicative functions has on the right to meaningful judicial review. In Allen, we stated:
A court's review of the substance of an agency decision is quite limited under R.S. 49:964(G). Under R.S. 49:964(G)(5), the agency's decision is subject to reversal only if it is "arbitrary or capricious or characterized by abuse of discretion...." Where, as here, there is no statement of reasons by the decision maker as to why it ruled as it did, it is impossible for a court to determine whether the decision maker acted arbitrarily and capriciously or not.
* * * * * *
Under R.S. 49:946(G)(6), the agency's factual conclusions are subject to a "manifest error" standard of review. Here, we simply do not know what factual findings and credibility judgments the committee actually made. Lastly, because of the agency's expertise, its findings are entitled to great weight. Here, the findings to which we are asked to defer are not the findings of the committee but those of the prosecutor.
Allen, 543 So.2d at 915.
The same concerns regarding the efficacy of the fact-finding process which were present in Allen are manifest here. Since the Ethics Committee adopted its executive counsel's proposed opinion almost in its entirety, we are unable to discern what factual findings and credibility determinations it made. Instead, all that the opinion embodies is executive counsel's findings of fact and credibility determinations. Although "equal access" was provided by Sexton to the other parties, we have no elaboration by the Ethics Committee on either the proposed changes made by Samaha and Sales Tax or the blanket objection that Georgia Gulf and Harrison made to the draft opinion. Therefore, as our analysis reveals in the present case, the Ethics Commission's failure to abide by La.R.S. 49:958 and La.R.S. 49:960 has a cumulative effect which leaves us with a record bereft of independent factual findings.
When we look more closely at the functions of the executive counsel and the Ethics Commission in the fact finding process, the importance of a differentiation between those functions cannot be gainsaid. Illustrative of the manner in which executive counsel can thwart the development of facts so needed for appellate review is the following trial colloquy between Mr. Foster, counsel for Georgia Gulf, Mr. Sexton, prosecutor for *179 the Ethics Commission, and Ethics Commission members Mr. Snider and Goss.
Q. [by Mr. Foster] I am going to show you a documentlet me show it to counsel firstand I'll mark it as Georgia Gulf No. 1.
(Objection made by Mr. Sexton and sustained by Mr. Snider).
Mr. Foster: I'd like to proffer the document and testimony relative to the document.
Mr. Sexton: Which objection is made.
Mr. Foster: Any problem with the proffer?
Mr. Sexton: I object.
Mr. Goss: I move that it not be granted. I think you should have produced it before now, Mr. Foster. That's my motion.
Mr. Snider: All in favor, say "aye".
[Motion to preclude proffer passed].
* * * * * *
Mr. Foster: With all due respect, I understand your ruling on the evidentiary issue. I disagree with it. I've got the absolute right to proffer an exhibit outside the evidence in the question on the proffer. As a matter of procedure, the administrative or civil procedure doesn't make any difference.
Mr. Sexton: I disagree.
Mr. Foster: On what authority?
Mr. Sexton: I believe that whether or not a proffer is to be made or how it is to be made lies with the trier of fact, in this case, the Commission ...
Mr. Foster: Second of all, this wasn't the subject of any subpoena. I would suggest that it wasn't. This is a privileged document that I am waiving and my client has waived his privilege to, right now, that otherwise wouldn't have been available.
Mr. Snider: We have to make a ruling pertaining to the document.
Mr. Foster: I understand that ruling. Are you saying that I can't question the witness on a proffernot as evidenceon a proffer on the document?
Mr. Goss: Yes.
Mr. Foster: Is that the ruling of the Commission?
* * * * * *
Mr. Goss: ... Our counsel feels that we don't have to let you offer that, and I am going to reassert that we reaffirm his position.
(Emphasis added).
If the executive counsel/prosecutor can control the development of facts at the hearing even though a proffer of evidence is specifically sanctioned in La.R.S. 49:955(E)(4)and his version of the facts is adopted by the Ethics Commission, it is evident that an appellate court will not be able to determine whether the decision maker acted arbitrarily and capriciously in reaching its decision. Such truncated procedure illuminates the problem we have addressed and strengthens the rationale of Allen and our holding herein.
The Ethics Commission's reliance on Gulf States Utilities v. PSC, 578 So.2d 71 (La. 1991), a rate case, for the proposition that its post-Allen procedure conforms with the requirements of due process is misplaced. As noted in Gulf States Utilities, the Administrative Procedure Act "specifically exempts proceedings involving rates of public utilities from the separation of functions requirement imposed on adjudicatory proceedings." Id. at 82-83. Thus, the approved procedure in rate cases is inapplicable to the evaluation of procedural due process in other administrative law settings.
Finally, the Ethics Commission contends that the First Circuit's decision in the present case conflicts with In re Dyer, 677 So.2d 1075. We disagree. The First Circuit in Dyer did not address the same issue presented here. To the contrary, the complaint raised in Dyer was that the same attorney served both as counsel to and prosecutor for the Commission, not prosecutor and adjudicator as we have in the present case. It follows, therefore, that the holding in Dyer was inapposite to the issue presented here. Thus, there was no conflict within the First Circuit on the question of Sexton's role as prosecutor/adjudicator.
*180 For the foregoing reasons, the judgment of the appellate court is affirmed and this matter is remanded to the Ethics Commission for a new hearing as the First Circuit Court of Appeal directed. To the extent that In re Beychok, 484 So.2d 912 (La.App. 1 Cir.1986), conflicts with the decision sub judice, it is reversed.
AFFIRMED.
NOTES
[*] Marcus, J. not on panel. Rule IV, Part 2, § 3.
[1] 95-1694 (La.App. 1 Cir. 6/28/96); 676 So.2d 1187.
[2] 96-1907 (La.10/4/96); 679 So.2d 1363.
[3] Samaha was charged with violating La.R.S. 42:1121 A by rendering compensated assistance to Georgia Gulf in connection with a sales and use tax audit conducted by the Department. He was also charged with violating La.R.S. 42:1112 B(4) when he negotiated future employment with Georgia Gulf while he actively participated in a Department sponsored audit of Georgia Gulf.
[4] Sales Tax, Inc. was charged with violating La. R.S. 42:1121 C by rendering compensated assistance to Georgia Gulf in connection with a Department audit in which Samaha, the sole shareholder of the corporation, had participated during his employment with the Department.
[5] Georgia Gulf was charged with violating La. R.S. 42:1117 by compensating Samaha through his wholly owned corporation, Sales Tax, Inc., when Samaha and Sales Tax, Inc. were prohibited by virtue of La.R.S. 42:1121 from receiving compensation.
[6] The Ethics Commission was comprised of Chairman Robert C. Snyder, and members, Victor Bussie, Avis Baker-White, Thomas G. Barham, and Cary S. Goss.
[7] Robert Harrison was not named in any charges filed by the Ethics Commission.
[8] The Ethics Commission opinion is divided into five sections, namely, Charges, Findings of Fact, Applicable Law, Opinion, and Decree. Two words were added and eight were deleted in the Findings of Fact. One paragraph was rewritten for editorial changes and La.R.S. 42:1117 was restated in the law section. A footnote was added to the Opinion section, explaining that Samaha was an agency head of a unit of auditors and he was an auditor, but he was not the head of the Department. No other changes were made.
[9] We reversed the First Circuit's Beychok decision. In re Beychok, 495 So.2d 1278 (La.1986). However, we note that our opinion did not address the appellate court's holding that sanctioned the use of executive counsel and his staff to prepare the Ethics Commission's opinion. In re Beychok, 484 So.2d at 928. Since we did not reverse the Beychok decision on this issue, the Ethics Commission implies that this limited part of the appellate decision has precedential value.