1, CALOGERO, Chief Justice
dissents from writ denial and assigns reasons:
This writ application involves a claim by plaintiffs, Fraternal Order of Police Crescent City Lodge No. 2 and others[1] (hereinafter referred to collectively as “FOP”), against defendants, City of New Orleans, the City Civil Service Commission of New Orleans, and the New Orleans Police Department (hereinafter referred to collectively as “City”), in which FOP seeks a judgment ordering the City to pay New Orleans policemen additional wages allegedly due under a 1928 amendment to La. Const. art. XIV, § 25 (1921). That amendment gave the City the authority to levy a separate property tax for the following dual purposes: (1) to create a double platoon system in the city fire department and to create a triple platoon system in the city police department, and (2) to provide a “pay increase” to city firefighters and police officers. The provision specifically required that .5 mill of the three mill tax be used exclusively for the purpose of providing a pay increase to the city’s police officers. FOP claims that since 1971 the City has failed to use the requisite portion of the tax proceeds for that purpose.
The district court entered summary judgment in favor of FOP and cast the City in judgment for more than $3 million for amounts it found due for the years 1980 through 1994; the court of appeal affirmed. The City seeks writs in this court, asserting that FOP has failed to carry its burden of proving entitlement to summary judgment. Because, for the reasons more fully explained below, I agree with the City’s arguments in that regard, I dissent from the majority’s decision to deny the City’s writ application. I would grant the writ, and bring this important case up to this court for complete review. Alternatively, I would enter a memorandum decision reversing the summary judgment and remand for a full trial on the merits.
My argument set forth below that FOP has failed to carry its burden of proving that it is entitled to judgment as a matter of law is, it seems to me, quite sound. One might therefore wonder why the majority would deny this writ application involving an arguably incorrect judgment against a public defendant in excess of $3 million (in *961 a summary judgment no less, and without this court granting a writ to examine the issue more closely), with the possibility of another comparable, significant award when the district court hereafter considers damages arising after 1994. I believe that the votes to deny by at least some of the justices were prompted by their belief that, in the absence of an assignment of error or argument in the supporting briefs by the City treating or urging the argument recited hereinafter, this court should not, or may not, supply arguments for the City.
However, the fact that the parties have failed to raise a particular argument does not prevent this court from considering that argument in the interests of justice and in pursuit of its obligation to apply the law correctly. La.Code of Civ. Proc. art. 2164 requires appellate courts to “render any judgment which is just, legal and proper upon the record on appeal.” Official Revision Comment (a) to that article states, in pertinent part, as follows:
The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal .point or theory was made, argued, or passed on by the court below.
Citing Huber, The Theory of the Case in Louisiana, 24 Tul. L.Rev. 66 (1949). This court has previously cited the above comment on multiple occasions. See Georgia Gulf Corp. v. Board of Ethics for Public Employees, 96-1907, p. 5 (La.5/9/97), 694 So.2d 173,176; Tugwell v. State Farm Ins. Co. 609 So.2d 195, 197 (La.1992); Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842, 844 (La.1980).
Thus, the fact that the City did not raise this issue in its writ application or brief in support is irrelevant, because FOP had the burden, not only to show that the facts are not in dispute, but also to show that the law entitles them to their requested relief. What we have in this case is a summary judgment in favor of FOP, and this court’s only role is to perform its own de novo review of the evidence and the law to determine whether FOP proved that summary judgment should be granted in its favor both because no genuine issues of material fact exist. and because FOP is entitled to judgment as a matter of law. As shown below, the law in this case simply does not support the judgment in favor of FOP.
Under the provisions of La.Code of Civ. Proc. art. 966, a party seeking summary judgment bears the burden of .proving both that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. Although I agree with the lower courts and the majority that FOP bore its burden of showing that no genuine issues of material fact exist, I believe that FOP has failed to carry its burden of proving that it is entitled to judgment as a matter of law.
In my opinion, after the 1974 Louisiana Constitution was adopted, no valid law or Constitutional authority has existed to support FOP’s claims. The portion of La. Const, art. XIV, § 25 (1921) that requires that .5 mill of the tax authorized therein “shall be used exclusively for the purpose of an increase in pay of officers and men in the Police Department” never, became statutory upon the adoption of the 1974 Louisiana Constitution. That provision was included in the 1974 Constitution only as a part of La. Const. art. XIV[2], § 16 (1974), entitled “Provisions of 1921 Constitution Made Statutory.” The preamble to subsection (a) of that article expressly states that the included provisions would continue as statutes “[sjubject to change by law or as otherwise provided in this *962 constitution, and except as any of them conflicts with this constitution.” (Emphasis added.) I am inclined to believe that, to the extent La. Const. art. XIV, § 25 (1920) required that one half of one mill of the authorized tax be used for police pay increases,[3] it conflicted, from the outset of the adoption of the 1974 Constitution, with La. Const. art. X, § 10(A)(1) (1974), which vests civil service commissions with the authority to “adopt a uniform pay and classification plan” for all classified employees, including police officers.[4]
My belief in this regard is supported by other provisions of the 1974 Constitution, as well as the debates of the delegates to the Constitutional Convention. In addition to the clear language in La. Const. art. XIV, § 16(A) (1974) that the | provisions listed therein were to be made statutory only to the extent they did not conflict with other provisions of the Constitution, La. Const. art. XIV, § 17 and 28 (1974) clearly reflect the intent that conflicting provisions would cease to have any effect. Those provisions state as follows:
Section 17. Provisions of Constitution of 1921 Repealed
Section 17. Except to the extent provided in this Article and except as retained in Articles I through XIII of this constitution, the provisions of the Constitution of 1921 are repealed.
Section 18. Existing Laws
Section 18. (A) Retention. Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution shall remain in effect until altered or repealed or until they expire by their own limitation.
(B) Expiration of Conflicting Law. Laws which are in conflict with the constitution shall cease upon its effective date.
(Emphasis added.)Also of particular interest to the issue discussed herein is a lengthy exchange set forth in the footnote below among delegates to the 1974 Constitutional Convention, discussing the fact that the provisions listed in La. Const. art. XIV, § 16 (1974) might not be Constitutional, in whole or in part.[5] In fact, it appears from the conversation recorded in the footnote that the delegates to the Constitutional Convention may have specifical *963 ly chosen the provisions ostensibly made statutory by La. Const, art. XIV, § 16, at least partially because of questions concerning their constitutionality under the 1974 Constitution. (This concern was no doubt in addition to the suggestion that some, or all, of the provisions were of local, rather than state-wide, concern, and certainly pay raises to the New Orleans police qualify under both these concerns.)
If the provision on which the FOP bases its recovery is no longer a valid provision of Louisiana law or if it is only statutory and conflicts with the constitutional provision concerning the exclusive authority of the civil service commission to establish pay plans for classified employees, and is thus either not effective or unconstitutional, it becomes apparent that FOP is not entitled to summary judgment because it has failed to show that it is entitled to its judgment as a matter of law. Accordingly, I dissent from the writ denial. I would grant the writ and review the legal basis of the claims made by FOP, or enter a judgment summarily reversing the summary judgment and remanding to the district court for trial on the merits.

. Also named as plaintiffs were William Roth, William Patin, Ronald Kennedy, Ira Austin, Sr., John Graham and Patricia Childress.

. Article XIV of the 1974 is entitled “Transitional Matters.”

. My concerns about the continued validity of the provision apply only to the portions requiring pay increases for classified employees, which conflict with the exclusive authority of the Civil Service Commission to adopt pay plans. The remaining two mills of the property tax do not conflict with any other provision of the 1974 Constitution and are therefore valid.

. Since the Civil Service Commission did not exist in 1928 when La. Const, art. XIV, § 25 (1921) was originally adopted. Further, I would note that police salaries were much lower at the time the provision was adopted in 1928 than they were when the 1974 Constitution was adopted. The Civil Service Commission of the City of New Orleans has had exclusive authority over pay for police officers since its creation in 1952.

. MR. JENKINS
Mr. Conroy, ... in general with regard to all of these points, is it not true that there has been little or no examination of the constitutionality under the new constitution of these proposed statutes?
* * * * *
MR. CONROY
Mr. Jenkins, I wouldn’t be in a position to answer that question....
MR. JENKINS
My point is that the listing of these sections here is not to be interpreted by the courts; it is not our intent to vouch for their constitutionality under the new constitution whatsoever.
MR. CONROY
No, no. As a matter of fact, the Section 1 that's been adopted I think clarifies the intent with regard to these sections. I think, Mr. Jenkins, in further response to that question I would have to refer to another one of the amendments in this series *963 which is designed to ... more or less make it clear that a great deal may still have to be done with regard to straightening out the statutes, straightening these parts of the constitution that sire carried into the statutes and reviewing them for possible deletions, and additions, and so forth. These are the ones that stood out based on the reports back from the substantive committees. All that this committee, as I would understand it from talking to the chairman of the committee, the only function of this committee was to get data fed into it from the substantive committees and then to compile this chart; then, we compile it and review it as we've done today.
* * * * *
MR. JENKINS
So, I want to further ask you, for the record, no court should interpret the inclusion of this document of these old provision of the constitution as any statement on our behalf that we believe these to be consistent with the new constitution.
MR. CONROY
I think that’s correct. As a matter of fact, I think that anybody examining these would have to take them with the full understanding that we have put them in a section where we've said to the extent they are not consistent, they won’t be effective. I think that’s the whole purpose of the format that this committee has used.
(Emphasis added.)