IzREMY CHIASSON, Judge Pro Tem.
Ronald Bankston and Lounges, Inc. appeal an adverse decision of the Louisiana Board of Ethics for Elected Officials (Board) finding them in violation of the Louisiana Code of Governmental Ethics and assessing penalties against them. Finding an error of law that interdicts the Board’s decision, we reverse.
FACTS
The following pertinent facts were stipulated:
From August 12, 1980, through July 10, 1984, Quad Area Community Action Agency (Quad Area) was designated as the community action agency for Tangipahoa Parish by the Tangipahoa Parish Council (TPC), and the agency received parish funds as well as the parish’s designation to receive state and federal funds designated for community action programs. Between 1984 and 1992, Quad Area did not receive any parish funding, but continued to receive the state and federal funds for community action.
On December 3, 1984, Mr. Bankston became employed with Quad Area as the Tangi-pahoa Parish Coordinator. He remained in the agency’s employ from that date through February 22, 1996, the date of his hearing before the Board. However, from late 1995 until the date of hearing, he was on sick leave, drawing a salary of $6,500.51 per quarter.[2]
On January 1, 1992, Mr. Bankston was sworn in as an elected member of the TPC. On January 14, 1992, the TPC again designated Quad Area as the official community action agency, but Mr. Bankston abstained from voting on the designation. During November of 1992, 1993, and 1994, the TPC adopted its operating and capital outlay budget for the following year, including a line item of $15,000 funding for Quad Area. Mr. Bankston voted for adoption of the budgets, along with all other members of the council.
On August 29,1988, Mr. Bankston and Dr. Melvin Allen formed a corporation named “Lounges, Inc.” in which they each owned 50 percent. On May 11, 1990, Lounges, Inc. purchased three buildings located at 12415 Wardline Road, Hammond, Louisiana, from Central Progressive Bank. The buildings were subject to an existing lease with Quad Area, and the bank signed over its interest in the lease to the buyer at the time of the sale. On October 1, 1990, 1991, and 1992, as well as on September 21, 1993, and August 5, 1994, Lounges, Inc. and Quad Area executed leases for the buildings providing periodically ^escalating rentals commencing October 1, 1992, up to a maximum of $2,050 per month. That rental rate was $2.00 per square foot as compared to the going rate in the area of $5.00 to $10.00 per square foot. The Louisiana Department of Labor approved the lease.[3] On December 4, 1995, Mr. Bankston executed a stock certificate endorsement evidencing a transfer of his 50 shares of Lounges, Inc. stock to Dr. Allen.
' ANALYSIS
On February 22, 1996, the Board conducted a hearing to consider the following charges against Mr. Bankston and Lounges, Inc.:
1.
That Ronald Bankston, a member of the Tangipahoa Parish Council, violated Section llllC(2)(d) of the Code of Governmental Ethics (La. R.S. 42:llllc(2)(D)) by having rendered compensated services to Quad Area Community Action Agency, Inc. (“Quad Area”) from January, 1992 to the present time while Quad Area had a financial relationship with Tangipahoa Parish.
*706 2.
That Ronald Bankston violated Section 1111E of the Code of Governmental Ethics (La. R.S. 42:1111E(1)) by assisting Quad Area, in his capacity as its “Tangipahoa Parish Coordinator”, in transactions with the Tangipahoa Parish Council.
3.
That Ronald Bankston violated Sections 1112B(3) and/or 1112B(5) of the Code of Governmental Ethics (La. R.S. 42:1112B(3) and/or 1112B(5)) by having participated in Tangipahoa Parish Council transactions in which, to his knowledge, Quad Area had a substantial economic interest, including, but not limited to, his participation in the following votes: (1) 1/27/92 vote to approve the 1992 budget for the parish which included a $15,000 grant to Quad Area; (2) 4/27/92 vote to designate Quad Area as the official community action agency for Tangi-pahoa Parish; (3) 11/23/92 vote for the 1993 parish budget including a $15,000 grant to Quad Area; (4) 11/22/93 vote for the 1994 parish budget including a $15,000 grant to Quad Area; and (5) 11/14/94 vote for the 1995 parish budget including a $15,000 grant to Quad Area.
4.
That Lounges, Inc., a legal entity in which Ronald Bankston, a member of the Tangi-pahoa Parish Council, owns an interest in excess of 25%, violated Section llllC(2)(d) of the Code of Governmental Ethics (La. R.S. 42:llllC(2)(d)) by having leased immovable property to Quad Area Action Agency, Inc. (“Quad Area”) at a time when Quad Area had a financial relationship with the Tangipahoa Parish Council by virtue of its receipt of annual $15,000 grants.
LThus, Mr. Bankston was charged with violating three provisions of the Louisiana Code of Governmental Ethics, specifically, LSA-R.S. 42:1111 C(2)(d), and LSA-R.S. 42:1111 E(l), and LSA-R.S. 42:1112 B(3) & (5). Lounges, Inc. was charged with violating LSA-R.S. 42:1111 C(2)(d).
The Board found there was insufficient evidence to support a conclusion that Mr. Bankston assisted Quad Area, for compensation, in transactions involving the Tangipahoa Parish Council and, therefore, he did not violate See. 1111 E. Accordingly, the only issue before us regarding Mr. Bankston is whether the Board erred in finding he violated the remaining two sections.
PAYMENT FROM NONPUBLIC SOURCES
We will first consider the charge that Mr. Bankston violated LSA-R.S. 42:1111 C(2)(d), which provides:
Section 1111. Payment from nonpublic sources
******
C. Payments for nonpublic service
******
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered ... to or for any person during his public service unless such services are:
* * * * * *
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) ... from receiving a gift.
Section 1115 prohibits the public servant from accepting any thing of economic value as a gift from any person if the public servant knows that person has or is seeking to obtain “contractual or other business or financial relationships” with the public servant’s agency. “Person” is defined in the Code of Ethics “as an individual or legal entity, other than a governmental entity or an agency thereof.” LSA-R.S. 42:1102(16). When we consider the use of the word person in Sub-section (d) in pari materia with the adjective “nonpublic” describing “sources” and “service” in Section 1111, we are compelled to conclude that a “person” under this section of the code must be a nonpublic legal entity.
*707 Thus, in order to prove Mr. Bankston violated Section 1111 C(2)(d), the prosecutor had to prove: 1) that Mr. Bankston was a public servant; 2) that he performed nonpublic services; 3) for which he received compensation; 4) from a nonpublic legal entity whose “gift” to him would have been prohibited under the Code of Ethics.
|sThe record supports the Board’s finding that Mr. Bankston, as an elected member of the Tangipahoa Parish Council, was a public servant at the same time he was performing services for Quad Area Community Action Agency for which he was compensated. However, there is nothing in the record to support a finding that Quad Area was a “nonpublic legal entity.” In fact, the record is devoid of any indication that the Board considered whether or not Quad Area was a nonpublic entity for the purposes of determining Mr. Bankston’s alleged violation of Section 1111.
The flaw in the Board’s conclusion that Section 1111 C(2)(d) is applicable in Mr. Bankston’s case is that Quad Area does not qualify as a “nonpublic source” or as a “person” from whom a gift would be prohibited. Unless Quad Area qualified as nonpublic, Mr. Bankston could not violate the section by receiving his salary from Quad Area or receiving the rentals Quad Area paid to Lounge’s, Inc.
Community action agencies are legislatively created. LSA-R.S. 23:61 et seq. The legislation was enacted “for the purpose of establishing a procedure for the designation of community action agencies; fixing the responsibilities of community action agencies; defining community action programs; and establishing a formula for the allocation of community service block grant funds.” LSA-R.S. 23:61. A “community action agency” is defined as “a public agency or private nonprofit corporation having authority under its charter or bylaws, or both, to administer community action programs, which has been designated as a community action agency by the parish governing authority.” LSA-R.S. 23:62(1). Despite the specification in the definition allowing private, nonprofit corporations, the current rule in Louisiana is that if an office or agency is created by the legislature, it is considered a state office or agency. Mullins v. State, 387 So.2d 1151, 1152 (La.1980). Because of the manner of creation of community action agencies, fact necessitates that they are state agencies or instrumentalities of the state. See Department of State Civil Service v. Housing Authority of East Baton Rouge, 673 So.2d 726 (La.App. 1st Cir.1996); 673 So.2d 726, 729 writ denied, 96-1452 (La 9/20/96); 679 So.2d 434. Furthermore, the legislation places all community action agencies in the state under the umbrella administration of the Louisiana Department of Labor (DOL).[4] Under the Code of Ethics, “person” means a “an individual or legal entity 16other than a governmental entity, or an agency thereof.” LSA-R.S. 42:1102(16). Mr. Bankston was an employee of Quad Area, which was under the supervision and authority of DOL, a governmental entity; Quad Area could not be a “person” under the Code of Ethics.
For purposes of the Code of Ethics, we conclude Quad Area cannot be classified as a “nonpublic” source of compensation. We reach this conclusion despite the legislative provision that “[a]n entity designated as a community action agency shall be considered a private, nonprofit organization unless it establishes otherwise by October 1, 1994 or upon its initial designation if such occurs after such date.” LSA-R.S.23:64.1 E. To hold otherwise would create a conflict between the community action agency legislation and the constitutional provision prohibiting the legislature from “[e]reating private corporations, or amending, renewing, extending, or explaining the charters thereof; granting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.” LSA-Const. Art. 3 § 12(A)(7). Furthermore, even if we recognize the private, nonprofit status of this particular corporation, such status does not prevent a designation of the agency as public or quasi public for specific purposes. The *708 testimony in the record is that this particular community action agency enjoys a budget of four to five million dollars, all of which is public funding. To classify an agency which runs such a board program utilizing public funds as a nonpublic source for purposes of the Code of Ethics would be unrealistic. See State ex rel. Guste v. Nicholls College Foundation, 564 So.2d 682 (La.1990), in which the issue was the existence vel non of “public funds” under the Public Records Act, LSA-R.S. 44.1 et seq., which defined a “public body” as “a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function.” LSA-R.S. 44.1(A)(1). The court held that the Foundation, which was a private nonprofit corporation, was a public body within the intendment of the Public Records Act.
Accordingly, we hold that Mr. Bankston cannot be guilty of a violation of the Section 1111 C(2)(d) because he did not receive compensation from a nonpublic source while he was an elected public official. The same analysis requires a finding that Lounges, Inc. also cannot be guilty of violating LSA-R.S. 42:1111 C(2)(d).
The remaining charge against Mr. Bankston was that as a council member he voted, from 1992 through 1994, on measures involving Quad Area, in which Quad Area, to his knowledge, had a substantial economic interest. Appellant has pointed out that the $15,00017annual grant from the TPC to Quad Area was earmarked for the poor and was not available for administrative purposes. Nevertheless, the Board found Mr. Bankston had violated LSA-R.S. 42:1112 B(3) & (5), which reads as follows:
B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
******
(3) Any person of which he is an ... employee.
* *5* * * * *
(5) Any person who is a party to an existing contract with such public servant, or with any legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, or who owes any thing of economic value to such public servant, or to any legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, and who by reason thereof is in a position to affect directly the economic interests of such public servant.
Again we find the definition of “person” is controlling. Quad Area could not be a person specified in (3) and (5) above because, by definition, a “person” must be a “legal entity other than a governmental entity or an agency thereof.” As we have discussed heretofore, Quad Area is a governmental agency for the purposes of the Code of Ethics. Accordingly, Mr. Bankston was not in violation of LSA-R.S. 42:1112 B(3) & (5).
It is unnecessary for us to address the other issues raised by the parties.
REVERSED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, J., assigns supplemental reasons.

. The record reflects Mr. Bankston’s salary remained at the same level for seven years prior to the hearing.

. The record reflects the lease entered into by Quad Area and Lounges, Inc. was pursuant to competitive bidding.

. There is testimony in this record that Mr. Bankston checked with the DOL prior to running for election to the Parish Council. Thus, Mr. Bankston and the Executive Director of Quad Area considered DOL its supervising agency.