JgLeBLANC, J.
This matter is before us on remand by the Louisiana Supreme Court. For the following reasons, we affirm.
FACTS
The pertinent facts of this case are taken from the opinion rendered by the supreme court in Bankston v. Board of Ethics for Elected Officials, 98-0189, p. 1-5 (La.6/22/98), 715 So.2d 1181, 1182-84.
On May 17, 1976, Quad Area Community Action Agency, Inc. (Quad Area) was created as a non-profit corporation for the stated purpose of mobilizing “community resources to combat poverty ... which includes initiating housing and employment opportunities.” From approximately August 12, 1980 through July 10, 1984, the Tangipahoa Parish Council designated Quad Area as its official community action agency. By virtue of that designation, Quad Area received parish funds as well as the parish’s designation to receive state and federal funds for community action development.
Ronald Bankston (Bankston) served as an elected member of the Tangipahoa Par *717 ish Council from June of 1980 until December of 1982. On December 3, 1984, Bank-ston was hired by Quad Area to be the Tangipahoa Parish Coordinator. He remained employed as a salaried employee of Quad Area through February of 1996. Bankston, off the Council after 1982, ran again and was re-elected to the Tangipa-hoa Parish Council, beginning a new term on January 1, 1992. During the time between 1984 and 1992, although Quad Area remained designated as the parish community action agency, it received no parish funding.[2] On January 14, 1992, the parish council again- designated Quad Area as the official community action agency for Tan-gipahoa Parish. Bankston abstained from that vote. On April 27, 1992, the Tangipa-hoa Parish Council again designated Quad Area as the | ¡¡official community action agency for the parish. Bankston did participate in this vote.
On January 27, 1992, the Tangipahoa Parish Council adopted its capital outlay budget, which included a $15,000 appropriation for Quad Area. Bankston did vote on this matter, and the resolution passed unopposed. This was the first time after 1982 that the parish had funded Quad Area. During November of 1992, 1993, and 1994, the Tangipahoa Parish Council adopted its operating and capital outlay budget for the following year, which included a line item of $15,000 to fund Quad Area. Bankston voted for the adoption of these budgets and all passed unopposed.
On August 29, 1988, Bankston and Dr. Melvin Allen created Lounges, Inc. (Lounges), a corporation in which each owned a fifty-percent interest. At that time, Quad Area had been renting office space in three buildings in Hammond. Sometime thereafter, the buildings that Quad Area occupied were repossessed by Central Progressive Bank following bankruptcy proceedings. On May 11, 1990, Lounges purchased the buildings, which at that time were subject to an existing lease with Quad Area. For the years 1990 through 1994, Lounges and Quad Area executed annual leases for the buildings. Beginning October 1, 1992, Quad Area paid $2,050 per month in rent,[3] with an annual rental rate of approximately $2 per square foot. This was an attractive rate as far as Quad Area was concerned, for the going rate for rental space in that area was purportedly $5 to $10 per square foot. In 1995, Quad Area extended its lease and continued to rent from Lounges at the time of the ethics hearing. On December 14, 1995, Bankston executed a stock certificate endorsement transferring his shares in Lounges to Dr. Allen.
On February 22, 1996, the Board of Ethics for Elected Officials[4] (the Board) convened to investigate the following charges leveled against Bankston and Lounges:
-Li-
That Ronald Bankston, a member of the Tangipahoa Parish Council, violated Section llllC(2)(d) of the Code of Governmental Ethics (La. R.S. 42:llllC(2)(d)) by having rendered compensated services to Quad Area Community Action Agency, Inc. (“Quad Area”) from January 1992 to the present time while Quad Area had a financial relationship with Tangipahoa Parish.
2.
That Ronald Bankston violated Section HUE of the Code of Governmental *718 Ethics (La. R.S. 42:1111E(1)) by assisting Quad Area, in his capacity as its “Tangipahoa Parish Coordinator,” in transactions with the Tangipahoa Parish Council.
3.
That Ronald Bankston violated Sections 1112B(3) and/or 1112B(5) of the Code of Governmental Ethics (La. R.S. 42:1112B(3) and/or 1112B(5)) by having participated in Tangipahoa Parish Council transactions in which, to his knowledge, Quad Area had a substantial economic interest....
4.
That Lounges, a legal entity in which Ronald Bankston, a member of the Tan-gipahoa Parish Council, owns in excess of 25%, violated Section llllC(2)(d) of the Code of Governmental Ethics (La. R.S. 42:llll(C)(2)(d)) by having leased immovable property to Quad Area ... at a time when Quad Area had a financial relationship with the Tangipahoa Parish Council by virtue of its receipt of annual $15,000 grants.
The Board later determined that Bank-ston and Lounges (sometimes hereafter collectively referred to as “Bankston”) had violated Section 1111 C(2)(d) of the ethics code. Bankston was additionally found in violation of Sections 1112 B(3) and 1112 B(5) of the ethics code. The Board found that there was insufficient evidence to find Bankston in violation of Section 1111 E(l).
On appeal, this court reversed. Bankston v. Board of Ethics for Elected Officials, 96-1764 (La.App. 1 Cir. 11/7/97), 703 So.2d 703. We concluded that Quad Area was a governmental agency for purposes of the Code of Governmental Ethics, and thus, it could not be a “person” as defined therein. Consequently, Bankston could not be found to have violated any sections of the code with which he was charged. The Louisiana Supreme |fiCourt granted writs to review the correctness of our decision. The supreme court found that Quad Area w?as a person and that Quad Area had both a contractual and a financial relationship with Tangipahoa Parish. Bankston v. Board of Ethics for Elected Officials, 98-0189, p. 8-10 (La.3/27/98), 715 So.2d 1181, 1186-87. In addition, the court found that Quad Area had a substantial economic interest in the transactions with Tangipahoa Parish. Bankston’s conduct was found to be in violation of the ethics code, and the decision of the Board was reinstated. The matter was remanded to us to address the remaining issues raised by Bankston on appeal. Bankston (on rehearing), 98-0189 at 1, 715 So.2d at 1188.
On remand, the single issue before us is whether the combined role of R. Gray Sexton (Sexton) and the Board staff denied Bankston due process.[5]
DISCUSSION
Sexton, assisted by Ms. Maris L. McCrory and Ms. Patricia H. Douglas, served as counsel to the Board during this matter. Bankston argues that Sexton and his staff served as investigators, prosecutors and authors of the Board’s draft opinion and that Sexton’s control of the case critically impinged on Bankston’s right to a neutral adjudicator. In support, Bankston cites In re Georgia Gulf Corporation v. Board of Ethics for Public Employees, 96-1907 (La.5/9/97), 694 So.2d 173.
*719 In Georgia Gulf, an employee of the Department of Revenue and Taxation was charged with ethical violations. Sexton served as both prosecutor and counsel to the Board. The employee was found to be in violation of the ethics code and fined. The supreme court affirmed an appellate court decision that found the intermingling of Sexton’s | ^prosecutorial role and his role as the formulator of the Board’s findings of fact and conclusions violated the employee’s right to due process. Georgia Gulf, 96-1907 at 8-14, 694 So.2d at 177-80. The supreme court’s decision relied on Allen v. State Board of Dentistry, 543 So.2d 908, 915-16 (La.1989), wherein an accused party before the Board of Dentistry was denied due process rights when the prosecutor before the administrative board also drafted the findings of fact and conclusions for the administrative board. Georgia Gulf advanced three criterions from Allen by which to evaluate administrative adjudicatory procedures challenged on due process grounds. The issues of (1) the failure to follow the procedural rules, especially those rules relating to the preparation of the administrative board’s findings of fact; (2) the damage done to the appearance of fairness by the prosecutor’s involvement in drafting the board’s opinion; and (3) the adverse consequences that the commingling of the prosecutorial and adjudicative functions has on the right to meaningful judicial review provide a framework for examining the actions of prosecutors and adjudicators of administrative decisions when due process issues are raised. Georgia Gulf, 96-1907 at 7-13, 694 So.2d at 177-79. Bankston asserts Sexton’s dual role offends the latter two concerns.
The opinion of the Board in this matter includes four charges, citing the section of the ethics code and identifying the actions by Bankston alleged to be in violation. The opinion contains twenty-four findings of fact. These, as stated in the opinion, are based on the stipulation of facts entered into by counsel for the Board and for Bankston. Of the Board’s twenty-four findings of fact, eight are taken verbatim from the joint stipulation and twelve others differ only slightly in construction or grammar, relating essentially identical findings to those contained in the stipulation. The remaining four were taken from testimony before the Board and from specific suggestions made by Bankston’s counsel. The “Opinion” section includes the holdings of the Board that particular actions by Bankston violated certain sections of the 17ethics code and imposes a fine for each violation, suspended upon certain conditions. These rulings are supported by the joint stipulation of facts, the recorded testimony before the Board and the deliberations by the Board members. We find no appearance of unfairness. The Board’s opinion included input from many sources and accurately reflects the recorded colloquy between Board members at the conclusion of the hearing.
Likewise, we find no commingled prose-cutorial and adjudicative functions resulting in adverse consequences on the right to meaningful judicial review. The record establishes that in addition to the multiple stipulations of factual findings relied on by the Board in their opinion, there was extensive testimony offered before the Board by witnesses and over twenty exhibits were introduced. The discussions by Board members at the conclusions of the hearing indicate a thorough knowledge of the facts and issues before the Board. The oral votes recorded at the close of the hearing are those of the Board members. The record provides no evidence of a commingling of the prosecutorial and adjudicative functions and allows for easy review of the decision-makers’ ruling.
CONCLUSION
For the foregoing reasons, the judgment of the Board of Ethics is affirmed. Costs of this appeal are to be borne by Ronald Bankston and Lounges, Inc.
AFFIRMED.

. The record reflects that the parish was financially unable to fund Quad Area during this period of time. The passage of a sales tax sometime around 1990 apparently afforded the parish enough income to allow it to resume funding to Quad Area in 1992, the year that Bankston was re-elected to the council.

. Before October of 1992, the rent had been $1,750 per month.

.The Board of Ethics for Elected Officials and other agencies charged with the administration and enforcement of ethical rules were eliminated by 1996 Acts, 1st Ex.Sess., No. 64, effective Jan. 1, 1997, and replaced with the Board of Ethics ("the Board”).

. We reject the Board’s argument that Bank-ston’s failure to raise this issue during the administrative process precludes our review of it on appeal. The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. Further, the Official Revision Comment to the article states the purpose of the article is "to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.” See also Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992).