IN RE: REPRESENTATIVE ARTHUR MORRELL.
No. 2007 CA 0890.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
KATHLEEN M. ALLEN, ALESIA M. ARDOIN, TRACY M. WALKER, Counsel for Plaintiff/Appellee, Louisiana Board of Ethics.
SUCHITRA J. SATPATHI, Counsel for Defendant/Appellant, Arthur Morrell.
Before GAIDRY, McDONALD, AND McCLENDON, JJ.
GAIDRY, J.
Arthur Morrell, a member of the Louisiana House of Representatives, appeals two separate decisions, both rendered on February 8, 2007, by the Louisiana Board of Ethics (the Board), finding him guilty as charged on three counts of violating certain provisions of the Code of Governmental Ethics, La. R.S. 42:1101 et seq. (the Code), and imposing three civil penalties totaling $7,100. After a thorough review of the record, as well as the numerous assignments of errors raised by Rep. Morrell in this appeal, we affirm the decisions of the Board.

FACTUAL BACKGROUND
By letter dated December 9, 2005, Rep. Morrell was informed by the Board that he had been investigated and that a public hearing was being ordered to consider charges against him for potential violations of Sections 1111E and 1112 of the Code. The letter alleged two violations of Section 1111E in connection with Rep. Morrell's legal representation for compensation of certain entities and his failure to file timely the statutorily required disclosure statements related thereto. Specifically, Rep. Morrell was alleged to have received compensation for his legal representation of Right Start Academy and Preschool in a hearing before the Louisiana Department of Social Services on January 14, 2004; and, also received compensation for legal services provided to Divine Concepts, Inc., in a legal action against the Louisiana Department of Health and Hospitals (DHH) on December 15, 2003. The affidavits of disclosure required by statute to be filed prior to or within ten days of this type of representation were not filed by Rep. Morrell until January 27, 2004.
The third allegation levied against Rep. Morrell was heard on a different date and decided in a separate decision rendered on the same date as the above two Section 1111E charges. Specifically, Rep. Morrell was charged with a potential violation of Section 1112 of the Code by proposing a house concurrent resolution during the Louisiana Legislature's 2004 Regular Session requesting certain modifications to the DHH's rules that would benefit certain clients for whom he was providing related, compensated legal representation.
After two separate public hearings,[1] the Board found Morrell had violated both sections of the Code as charged. Morrell was fined $2,000 for the violation in connection with his representation of Divine Concepts, Inc., based on the finding that the disclosure statement therefor was filed well after the ten-day statutory requirement. For his violation in connection with his representation of Right Start Academy, however, the Board imposed a fine of only $100, expressly considering as mitigation the fact that the affidavit had been mailed within ten days of that representation, although it had been mailed to an incorrect address and was received and filed beyond the statutory mandate. After finding Rep. Morrell guilty on the Section 1112 violation as well, the Board noted that it was authorized to impose a fine of up to $10,000 for such violation, and imposed a fine of only $5,000.
The Board returned for further proceedings on February 8, 2007, to craft, review, and adopt for publication written opinions on its findings regarding the three charged violations. These opinions were finalized as judgments on February 23, 2007. It is from both of these opinions that Rep. Morrell appeals.

APPLICABLE LAW
Pertinent to two of the charges against Rep. Morrell, Section 42:1111E of the Code prohibits public servants from accepting payments for rendering assistance to certain persons. Subsection (2)(a) of that provision allows a limited exception to this prohibition, providing as follows:
No elected official of a governmental entity shall receive or agree to receive any thing of economic value for assisting a person in a transaction or in an appearance in connection with a transaction with the governmental entity or its officials or agencies, unless he shall file a sworn written statement with the board prior to or at least ten days after initial assistance is rendered

(Emphasis added).[2] Rep. Morrell's legal representation for compensation provided to Right Start Academy and Divine Concepts, Inc., and his failure to file timely disclosure statements related thereto, form the basis of the alleged violations of the aforementioned prohibition.
Section 1112A, pertinent to the third charge levied against Rep. Morrell, prohibits a public servant from participating in a transaction "in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity." Subsection B(5) of 1112 further prohibits a public servant from participating in a transaction in which the person with whom the public servant has a contract, has a substantial economic interest, and thereby can affect the economic interest of the public servant.
Substantial economic interest is defined in the Code as "an economic interest which is of greater benefit to the public servant or other person than to the general class or group of persons," except for the interest he has that arises solely from his public employment or office or the interest that a person has as a member of the general public. La. R.S. 42:1102(21).
Rep. Morrell's actions in proposing a house concurrent resolution that had the potential of directly and primarily benefitting clients for whom he was providing related compensated services at the time form the basis for the alleged violation of the aforementioned prohibition.

ISSUES ON APPEAL
Although Rep. Morrell alleges eleven separate assignments of error, we have determined that these assignments collectively raise three issues for our review on appeal: (1) whether the Board erred in making certain factual findings and legal conclusions and determining Rep. Morrell's actions constituted violations of the Code; (2) whether certain evidentiary rulings by the Board, specifically the admission of alleged hearsay and the exclusion of alleged exculpatory evidence from Morrell's proffer, were erroneous; and (3) whether the Board's overall conduct in charging, investigating, and adjudicating Rep. Morrell, and in allowing a commingling of a prosecutorial role with an adjudicative role during his hearings violated the Louisiana Constitution and deprived Rep. Morrell of his fundamental and procedural due process rights. For all of the following reasons, we find no merit to any of Morrell's assignments of error or arguments, and accordingly, affirm the judgment.

FUNDAMENTAL AND PROCEDURAL DUE PROCESS
Mr. R. Gray Sexton, counsel for the Board, and Peggy Sabadie served as cocounsel staff trial attorneys in the public hearings before the Board on the charges against Rep. Morrell. Rep. Morrell claims he was deprived of his fundamental and procedural due process rights to a fair and impartial tribunal on several fronts in connection with Sexton's alleged dual-representation at the hearings. First, he claims the Board impermissibly failed to designate a trial attorney for his hearing on these matters who was separate from Sexton, who was also counsel for the Board, causing an alleged "inherent misstep into the realm of adjudication on the part of the prosecutor." Further, Rep. Morrell claims the Board exceeded its authority and committed a "de facto violation of due process" by conducting the investigative, prosecutorial, and adjudicative functions of this matter en banc. According to Morrell, by sitting en banc to investigate the charges, and then sitting in adjudication of those charges, "the ultimate fact finders have already decided the defendant's fate prior to the hearing," thus, depriving him of an impartial and neutral tribunal, as well as a fair and impartial hearing. Notwithstanding these broad sweeping allegations, Morrell fails to present any concrete evidence in the record of these proceedings to establish or support the contention that either Sexton's involvement in the proceedings, or the investigative and prosecutorial activities by the Board actually deprived him of any of his fundamental due process rights. Indeed, our review of the record in its entirety reveals that the Board and Sexton acted in careful and strict compliance with the Code, the Rules for the Board of Ethics, the Administrative Procedure Act, and in accordance with the jurisprudential guidelines addressing these due process issues in this context.
No case could be more instructive than one decided by this court in 2000, which involved the same issue regarding Sexton's participation, the same alleged violations of the Code, and in which the same arguments were presented. In In re Ronald Bankston and Lounges, Inc., 96-1764 (La. App. 1st Cir. 5/12/00), 761 So.2d 716, the salient issue before us was "whether the combined role of R. Gray Sexton and the Board [of Ethics for Elected Officials] staff denied Bankston due process."[3] As does Rep. Morrell, Bankston asserted that Sexton and his staff served as investigators, prosecutors, and authors of the Board's written opinion and that Sexton's dual role as counsel for the Board and staff trial counsel gave him undue control of the case and "critically impinged on Bankston's right to a neutral adjudicator." Id., at p. 718. In resolving this issue in Bankston, the court carefully reviewed the Board's written opinion and the transcript of the proceedings held. We noted that the opinion of the Board detailed numerous findings of fact that we found were amply supported by the record and evidence presented at the hearing. Moreover, we reviewed the "opinion" section of the Board's decision detailing the specific actions taken by Bankston and how they constituted violations of certain sections of the Code. Our review revealed that the Board's decision included input from many sources and incorporated these, the evidence presented at the hearing, and the deliberations and considerations of the Board itself. We concluded the Board's conduct, proceedings, and Sexton's alleged "commingled prosecutorial and adjudicative functions" did not violate any due process rights, nor did they result in any adverse consequences to his right to meaningful judicial review. Id., at p. 719.
Our careful review of the transcript of the hearing in this case, as well as our review of the overall functioning of the Board during these proceedings as reflected by the record, leads us to the same conclusion reached in Bankston. First and foremost, in contrast to the cases relied on by Rep. Morrell,[4] there is no evidence in this record that Sexton in any way participated in the formulation, drafting or writing of the decision of the Board, or in the findings of fact or opinions of law detailed in that decision. Moreover, the Board has adopted rules to safeguard against such a perceived violation of impartiality and bias by carefully delineating the duties of the trial attorney and expressly forbidding such attorney from participating in the formulation of the Board's opinion and from giving the Board any advice or counsel. Notwithstanding plaintiff's assertions to the contrary, our careful review of the transcript of the hearing reveals many instances in which both the Board and Sexton were acutely and expressly aware of the bifurcated functions and took every precaution to keep the roles clearly delineated and not commingled. Moreover, the record reveals that the Board repeatedly afforded both parties the same and equal opportunities to hear and respond to the questions and discussions of the Board. For example, in one instance, Rep. Morrell objected to questions from the Board to Sexton, and the Board (member) responded:
Let me say this. I'm not seeking legal advice. I want to understand his position. I'm going to ask you some questions in a minute as well. I want to understand your position as well.

(Emphasis added). In another instance, in responding to a question from the Board concerning the appropriateness of the penalty to be imposed, Sexton specified:
This is my answer and my argument. I'm not purporting to give legal advice to the Board. This is my argument as trial counsel.
Following Sexton's answer, counsel for Rep. Morrell was given equal opportunity to respond and argue regarding the appropriateness of the penalty.
Finally, we find without merit Rep. Morrell's claim that the Board, by sitting en banc in both the investigative and adjudicative functions in this matter, committed a "de facto violation of due process." Again, notwithstanding Morrell's broad sweeping allegations, he cites no authority or evidentiary support to establish he suffered a deprivation of due process rights. Morrell argues that the Board violated the statutory procedure provided by La. R.S. 42:1141; however, a plain reading of the statute makes it abundantly clear that the Board has the discretion to conduct all functions en banc or in separate panels, the only mandate being the panels must comprise no less than three members. Moreover, the statute does not forbid Board members from participating in both the investigative and adjudicative functions required, and Morrell has failed to establish any deprivation of rights suffered by him as a result. Lastly, we note that these are the types of concerns and arguments more properly addressed through the legislative process; it is not a function of the courts to rewrite or interpret clear legislative provisions.

FACTUAL FINDINGS

Section 1112 Violation
Rep. Morrell raises several issues regarding the factual findings of the Board that underlie its finding him in violation of Section 1112 of the Code. He also argues that the penalties imposed for these infractions are excessive.
Morrell claims the Board erred in finding that he violated Section 1112 of the Code in connection with his proposal of a resolution (HCA 37 of the 2004 Regular Session) on two fronts. First, he contends that he attempted to introduce the same resolution during the 2001 Legislative Regular Session and was neither investigated nor charged with a violation at that time. However, other than to state that fact, Mon-ell presents no argument and cites no authority, nor do we know of any, to support the proposition that the Board cannot investigate or charge an elected official with a violation of the Code if the elected official engaged in the same or similar actions in the past without being charged with a violation.
Secondly, Morrell argues that the Board erred in finding that he had a substantial economic interest in the resolution as a result of his legal representation of only a small number of clients affected by such legislation. Morrell contends the Board erred in concluding that either he or his clients benefited or stood to benefit more from the resolution than the general class of persons who would benefit from such legislation, if passed.
Morrell also contends the Board erred in finding a violation since the resolution was never voted on, passed, or enacted. It is of no moment in this matter that the resolution did not go any further than it did in the legislative process. Section 1112 of the Code prohibits participation in certain activities, notwithstanding the success or outcome of those activities. Morrell does not deny that he authored the resolution or that at the same time he represented six clients who would benefit directly from the resolution, if passed. Therefore, there is no merit to the argument that no violation could be found since Morrell did not succeed in his efforts.
Nor is there any merit to Morrell's contention that he did not have a sufficient substantial economic interest in the resolution to constitute a violation of the Code. As noted earlier, substantial economic interest is defined in the Code as an economic interest which is of greater benefit to the public servant or other person than to a general class or group of persons.
The resolution at issue sought to amend a rule promulgated by the DHH, which at the time, prohibited mental health rehabilitation facilities that had been subject to sanctions (been placed on probation) by DHH from admitting any new clients during the entire appeal process of their sanctions. The change sought by the resolution was to allow suspended providers to admit new clients during the appeal process, on the grounds that the appeal process was taking up to a year, and the financial loss to the providers from not being able to admit new clients during that time was devastating and a serious impediment to their ability to remain open and provide services.
The record reveals that at the time Mon-ell authored and introduced the resolution, there were a total of one hundred and twenty-eight mental health rehabilitation agencies. Of those providers, fourteen had been sanctioned (prohibited from accepting new clients) and were awaiting the appeal process. Mon-ell had contracts with, and was providing legal services for compensation to six of those fourteen suspended providers. Mon-ell argues that the resolution, if passed, would have equally benefited all one hundred and twenty-eight providers, and not just his clients. Therefore, he claims that neither he nor his clients had a substantial economic interest in the resolution greater than the benefit that would befall the general class of mental health rehabilitation providers.
Morrell's argument lacks proof and logic. A plain reading of the resolution and its intended purpose reveals that suspended providers would benefit directly. There was no evidence presented about the remaining providers who were not sanctioned or on probation. Certainly, at the time of the resolution, those remaining providers would not benefit from its passage, as they were not being prohibited from accepting new clients. The lack of evidence regarding any history of sanctions and suspensions of these providers renders it impossible to determine if they would ever benefit from the resolution. It is just as possible that these providers were always in compliance and never sanctioned or on probation. Thus, there is no evidence to establish that these other providers would ever belong to a general class of persons or entities who would benefit from the resolution. Indeed, the evidence is abundantly clear that the substantial economic benefit to be directly derived by the passage of Morrell's resolution was by the fourteen suspended providers, six of whom were Morrell's clients for compensation.
The record fully supports the Board's factual findings and legal conclusions that Mon-ell's participation in HCA 37 of the 2004 Regular Session of the Louisiana Legislature constitutes a direct and clear violation of Section 1112 of the Code and its prohibition against such participation. Therefore, the Board did not err in finding him guilty and imposing a penalty for the violation.

Penalty Imposed
Morrell's contention that the penalties imposed are excessive is wholly without merit. The penalty to be imposed for a violation of the Code is within the Board's discretion. Our review of the Board's discretion consists solely of a search for arbitrary and capricious conduct. Glazer v. Commission of Ethics for Public Employees, 431 So.2d 752, 761 (La. 1983). Morrell's claim pertains only to the penalties imposed for the failure to provide timely disclosures in connection with Section 1111E(2) of the Code. (He makes no argument with regard to the $5,000 penalty imposed for the Section 1112 violation; therefore, that penalty is not under review.)
As noted earlier, the Board imposed a $2,000 penalty for the violation in connection with Morrell's disclosure statement concerning his representation of Divine Concepts, Inc., which was filed approximately one year beyond the required date. With respect to the untimely disclosure statement filed in connection with his representation of Right Start, the Board generously gave consideration to the fact the statement had been mailed within the requisite time period, but was received untimely as a result of its having been mailed to an old address. Although this mistake does not excuse the violation, the Board considered it greatly mitigated the violation and imposed a penalty of only $100 for that violation.
Section 1153 of the Code provides that a penalty of up to $10,000 may be assessed for a single violation of the Code. Therefore, the total penalty of $2,100 for two violations assessed against Morrell in this matter was well within the Board's great discretion, and certainly neither arbitrary nor capricious.

EVIDENTIARY RULINGS
Finally, Morrell assigns error to the Board's allowing into evidence at the hearing The Advocacy Report, claiming it was impermissible hearsay. He also claims the Board erred by "excluding exculpatory evidence offered in defendant's proffer," thereby denying him the opportunity to completely present his case." Again, these contentions lack merit.
The Advocacy Report was submitted in conjunction with the testimony of the State Medical Director, and served to lay out the general history and purpose of DHH's policy regarding the ability of sanctioned providers to accept new patients during the appeal process. Notwithstanding its submission, we find it was not directly relevant to the charges against Morrell or the determination of his actions as being in violation of the Code. There is absolutely no mention of the report made in the Board's opinion, nor is there any other indication that the Board either considered or relied on the report in making its findings regarding Morrell's conduct and actions. Therefore, without addressing the propriety of admitting the report or its alleged classification as hearsay, we find that, even if improperly admitted, the evidence had no impact on the Board's considerations or ultimate findings and was totally harmless to Rep. Morrell.
The evidence sought to be introduced by Rep. Morrell was the testimony of an employee of DHH regarding the actual number of new clients the suspended providers might have gained if the DHH rule was suspended or amended by the resolution. The Board excluded this testimony, expressly finding it to be irrelevant to the critical determination of whether Morrell had a substantial economic interest in the passage of the resolution. The Board was correct: the issue was whether Morrell and his clients would benefit from being given the opportunity to accept new clients, not whether they actually did. Because the Board correctly deemed the evidence irrelevant to the issues before it, it acted within its discretion in disallowing its introduction.

CONCLUSION
For the foregoing reasons, we find that the proceedings conducted by the Board comported with Rep. Morrell's constitutional fundamental and procedural due process rights, and were in accordance with the statutory guidelines and scheme. The record fully supports the Board's findings of fact and conclusion of law in its determination that Rep. Morrell committed violations of the Code. And finally, the record reveals that the penalties imposed were well within the Board's discretion and certainly not arbitrary or capricious. Accordingly, the decision of the Board is affirmed in its entirety. Costs of this appeal are assessed to Rep. Morrell.
AFFIRMED.
NOTES
[1] Apparently, Rep. Morrell requested that the Board sever the Section 1112 charge from the two Section 1111E charges since they arose out of separate facts. The Board granted this request, and the hearing on the alleged 1112 violation was held on March 9, 2006. Morrell was found guilty of that charge; however, before the hearing on the other two charges, Morrell sought, and was granted, a rehearing on the 1112 charge on the basis of newly discovered evidence. On September 14, 2006, the Board held the hearing on the two charges under Section 1111E, as well as the rehearing on the 1112 charge.
[2] It is undisputed that the governmental entity for an elected member of the legislature is the State of Louisiana. See La. R.S. 42:1102(12).
[3] The only factual yet insignificant distinction between the cases is that the present case concerns a member of the Louisiana House of Representatives and Mr. Bankston was an elected member of the Tangipahoa Parish Council.
[4] See In re Georgia Gulf Corporation v. Board of Ethics for Public Employees, 96-1907 (La. 5/9/97), 694 So.2d 173; Allen v. Louisiana State Bd. of Dentistry, 543 So.2d 908 (La. 1989).